ALEXANDER B. TRUEBLOOD (Cal. Bar No. 150897)
10940 Wilshire Boulevard, Suite 1600
Los Angeles, California 90024
Telephone:  (310) 443-4139
Facsimile:  (310) 943-2255

ROBERT STEMPLER (Cal. Bar No. 160299)
8200 Wilshire Blvd, Suite 200
Beverly Hills, CA 90211-2331
Telephone (323) 486-0102
Fax: (323) 488-6895

BRANDON A. BLOCK (Cal. Bar No. 215888)
433 North Camden Drive, Suite 600
Beverly Hills, CA 90210
Telephone (310) 887-1440
Facsimile: (310) 496-1420

Attorneys for Plaintiff
JAGDEEP BIDWAL

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAGDEEP S. BIDWAL, <br><br> Plaintiff, <br><br> vs. <br><br> UNIFUND CCR PARTNERS, UNIFUND PORTFOLIO A, LLC, QUALL CARDOT LLP, MATTHEW W. QUALL, LANG, RICHERT & PATCH, A PROFESSIONAL CORPORATION, ELECTRONIC DOCUMENT PROCESSING, INC., and JULIO ASCORRA, <br><br> Defendants. | Case No:  3:17-CV-2699-LB <br><br> **MOTION FOR AN AWARD OF ATTORNEYS FEES AND COSTS** <br><br> Date:  March 7, 2019 <br> Time: 9:30 a.m. |

**Notice of Motion**

TO ALL PARTIES HEREIN AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 7, 2019 at 9:30 a.m., in the courtroom of Magistrate Judge Laurel Beeler, San Francisco Courthouse, Courtroom B - 15th Floor, 450 Golden Gate Ave., San Francisco, California, plaintiff Jagdeep Bidwal will and hereby does move for an award of attorneys fees and costs in this matter. The motion is based on the declarations of Alexander Trueblood, Robert Stempler, Brandon Block, and John O'Connor, this notice of motion and points and authorities, on the files and records in this action, and on such oral argument as the Court may permit.

The motion is brought pursuant to the fee-shifting provisions of the Fair Debt Collection Practices Act (15 U.S.C. § 1692k(a)(3)) and the Rosenthal Fair Debt Collection Practices Act (Civil Code § 1788.17 and 1788.30(c)), on the grounds that plaintiff is the prevailing party in this matter. Plaintiff seeks an order awarding him $359,865 in attorneys fees, and $2,267.48 in costs.

**Memorandum of Points and Authorities**

I.   INTRODUCTION

A.   <u>Factual Background</u>

This is an action for violations of the Fair Debt Collection Practices Act and the Rosenthal Fair Debt Collection Practices Act, against a debt collection agency (Unifund), its collection lawyers (Quall Cardot and Lang Richert & Patch) and their process servers (EDP, Williams, and Ascorra), who furtively obtained a collection default judgment in Los Angeles through "sewer service." Unifund is one of the largest debt collection agencies in the nation.  Its business is to buy old debt for pennies on the dollar, and then collect the full amount, often through default judgments.

Plaintiff moved from Kester Avenue in Los Angeles, to the Bay Area, in 2008.  By 2010, Unifund had plaintiff's correct address in Union City, and sent him

a July, 2010 collection letter there. Trueblood Decl., Exh. 5.  But in November, 2010, the law firm defendants chose to sue plaintiff in Los Angeles, where they knew he didn't live.  In December, 2010, defendant EDP's process server was informed by the current resident of the Kester Avenue apartment that *plaintiff no longer lived there*. Trueblood Decl., Exh. 4. EDP and the defendant collection lawyers nevertheless "served" Bidwal at the Kester Avenue address in June, 2011 by allegedly leaving the complaint with a "John Doe," and filed a false proof of service with the court stating that plaintiff lived at Kester Avenue.

A year after the 2011 judgment, on May 14, 2012, the collection lawyers' own skip-tracing revealed again that plaintiff lived in the Bay Area, in San Ramon. Trueblood Decl., Exh. 6, at p. QUALL 56. Yet for another three years after this skip tracing, from 2012 to 2015, the defendant collection lawyers continued to mail-serve Bidwal at his old Los Angeles address, ensuring that plaintiff never learned of the judgment. Trueblood Decl., ¶ 18.

On October 19, 2016, the defendant collection lawyers levied plaintiff's bank accounts in Northern California under authority of the void judgment. Trueblood Decl., Exh. 6, at p. QUALL 83.  Plaintiff finally found out about the judgment, and called Quall Cardot to state he was never served. He provided documentary proof of his correct address in 2010, including Homeland Security documents and his marriage certificate. Trueblood Decl., Exh. 6, at p. QUALL 85-86. The collection lawyer defendants acknowledged on November 11, 2016 that they had "received documentation from consumer showing him living at 32749 Regents Blvd. Union City, California at time of service." Id. at QUALL 86.

However, instead of setting aside the judgment as it should have, Unifund doubled down. After receiving plaintiff's proof of address documentation from the Quall lawyers, and knowing plaintiff had no lawyer himself, defendant Unifund instructed Quall to demand that plaintiff pay exactly the amount, to the penny, that it had just wrongfully levied from plaintiff's bank account ($4,594.41). Trueblood

Decl., Exh. 7, p. UNIFUND 27. Quall complied without questioning his client's instruction, which was essentially to commit extortion. Trueblood Decl., Exh. 6, p. QUALL 86. Defendants thus not only intentionally took a fraudulent judgment knowing the service address was wrong, they then deliberately leveraged that judgment, which they knew was void, to extract money from plaintiff. When plaintiff hired counsel and filed a motion to set aside default, defendants realized they could no longer bully an unrepresented consumer. Unifund quickly folded, and stipulated to set aside the void judgment.

B.   Procedural and Settlement History

Defendants offered a stubborn and aggressive defense to this action, which was their right to do, but which ran up fees substantially. The Unifund/Quall defendants hired Simmonds & Narita as their counsel, who are niche specialists in defending the debt collection industry against FDCPA litigation, and bill themselves on their website as "A Complex Litigation Law Firm." Simmonds and Narita staffed the case with two lawyers, including its named partner Tomio Narita, and EDP hired two lawyers, for a total of four lawyers on the defense side. Plaintiff had two lawyers (Alexander Trueblood and Robert Stempler) throughout most of the case, until a third lawyer (Brandon Block) joined briefly at the end (he spent only 7.8 hours on the case).

Defendants ignored plaintiff's early offers to settle, which were at numbers quite near the final settlement figure of $24,500 plus attorneys fees ($17,000 cash, plus $7,500 in value for dismissal of the state court debt collection action). Six months into the litigation, the Unifund/Quall defendants were still insisting that plaintiff dismiss the complaint outright, with no settlement payment at all. Plaintiff continued with the case, and after 18 months of litigation, defendants capitulated and agreed to pay $24,500, plus plaintiff's attorneys fees and costs.

The following is a chronology of the key events in the case.

May 10, 2017.   Complaint filed.

3

MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEYS FEES

June 5, 2017.  Plaintiff offers to settle the entire matter for approximately $24,000, plus dismissal of the state court action and payment of plaintiff's attorneys fees and costs.  Trueblood Decl., ¶ 20, Exh. 8. Defendants do not respond. Id.

June-August, 2017.  The parties discuss ADR procedures, conduct the Rule 26(f) conference, and file their Rule 26 report.  The Quall/Unifund defendants answer the complaint. Plaintiff serves initial disclosures.

August, 2017.  Plaintiff files a First Amended Complaint, and defendants file their answers.  Plaintiff begins a meet and confer with defendants about the Unifund/Quall answer which contains many inapplicable defenses.

September, 2017.  The Quall/Unifund defendants serve initial disclosures.

October, 2017.  The Quall/Unifund defendants file an amended answer, removing most defenses and adjusting the few that are left to include more detail.

December, 2017.  The EDP defendants offer to settle the matter for $5,000 only, with plaintiff to bear his own attorneys fees/costs. Trueblood Decl., Exh. 9.

January, 2018.  Plaintiff counteroffers to EDP to settle for approximately $17,000 plus fees and costs. EDP does not respond. Trueblood Decl., ¶ 22, Exh. 10.

January 26, 2018.  The Unifund/Quall defendants send a letter demanding that plaintiff dismiss the complaint without any payment. Trueblood Decl., Exh. 11.

February, 2018.  Initial case management conference.  Court issues trial schedule and deadlines.

March-April, 2018.  Unifund and EDP insist over plaintiff's objection that their representatives be excused from attending the mediation. After briefing and several conferences with the mediator and ADR department, the court orders defendants to attend personally.

April, 2018.  The EDP defendants serve initial disclosures.

April 23, 2018.  Unifund/Quall's counsel requests an updated settlement demand, and plaintiff offers to settle with Unifund/Quall only for approximately $18,000, or $24,000 for all defendants together, plus attorneys fees and costs and

4

dismissal of the state court action. Defendants make no counter-offer. Trueblood Decl., ¶ 24, Exh. 12.

May, 2018. Plaintiff's lead counsel has a lengthy discussion with Unifund's senior in-house counsel for Unifund about settlement. Unifund does not follow up with any counter-offers. Trueblood Decl., ¶ 25.

June 14, 2018. The parties attend mediation. The process server defendants, Ascorra and Williams, fail to appear personally, despite having being specifically ordered to do so in April, 2018. At the mediation, Unifund serves Mr. Bidwal personally with the summons and complaint in the state court action, eight years after the case was filed, to deliver an intimidating "message," which instead creates bitterness at the start of the negotiations. Trueblood Decl., ¶ 26. Mediation fails.

June 26, 2018. Plaintiff offers to settle with defendants for $20,000 plus attorneys fees and costs determined by the court, and dismissal of the state court action. Trueblood Decl., Exh. 12.

July 9-10, 2018. Defendants make successive settlement offers to plaintiff of $10,000 plus attorneys fees and costs determined by the court, and then $12,000. The offers do not include dismissal of the state court case. Plaintiff counteroffers at $20,000 plus attorneys fees and costs, plus dismissal of the state action, and defendants do not respond any further. Trueblood Decl., Exh. 13.

July, 2018. The case is extremely active. The court orders a second ADR proceeding, and the parties select Hon. Jacqueline Corley as the settlement officer. The parties cannot agree whether Judge Beeler's earlier standing order limiting discovery is applicable in light of the second ADR proceeding, and have many disagreements on whether discovery other than document demands can go forward. Plaintiff responds to extensive discovery from the defendants. Unifund demands depositions of plaintiff, and his mother and father, and attempts unsuccessfully to serve these third parties with subpoenas. Judge Beeler orders submission of a specific discovery plan and deposition schedule.

August, 2018. The case remains very active. Unifund's earlier service of plaintiff with the state court summons at the mediation engenders a dispute over whether the federal action should be stayed under the abstention doctrine now that the state court case threatens parallel duplicative proceedings. The parties brief the issue before Judge Beeler in the context of case management conference statements, with no ruling. There are multiple case management conferences and orders. The parties continue to disagree on the scope of Judge Beeler's standing order on discovery. After briefing, Judge Beeler clarifies that discovery is now unlimited and takes the second settlement conference with Judge Corley off-calendar. Plaintiff files a second amended complaint and related motion.

August 20, 2018. Plaintiff settles with defendant Williams ($1,000 payment). Trueblood Decl., Exh. 14.

August 23, 2018. Plaintiff offers to settle with Unifund/Quall for $19,000 plus attorneys fees and costs. Trueblood Decl., Exh. 2, August 23, 2018 entry.

September, 2018. Plaintiff withdraws his request for a stay of the federal action, reluctantly giving in to defendants' insistence on parallel proceedings in state and federal court over the service issue. Plaintiff's counsel advises the defense that they represent Bidwal's family members, and accepts service of deposition subpoenas on their behalf, to avoid further disputes on that issue. The parties set a deposition schedule.

September 14, 2018. The case settles as to all remaining defendants, with defendants agreeing to pay $24,500 to plaintiff ($16,000 cash from the Unifund/Quall defendants, $1,000 from defendant Williams, and dismissal of the state court debt collection action, a $7,500 value), with the court to determine plaintiff's attorneys fees and costs as the prevailing party. Trueblood Decl., Exh. 15. Plaintiff files a notice of settlement on September 19, 2018.

October-November, 2018. The parties negotiate and draft a written settlement agreement.

December, 2018 – January, 2019.  Plaintiff dismisses the complaint and prepares a motion for attorneys fees and costs.

C.	Discovery History

Written discovery on both sides was extensive in this case. Depositions were scheduled but not begun before the matter settled.  The following is a timeline of discovery events.  See Declaration of Robert Stempler.

8/10/2017. Plaintiff serves Rule 26 initial disclosures and 191 pages of documents.

12/23/2017.  Plaintiff serves written discovery on each of the seven named defendants.

> Unifund Portfolio A (14 Rogs, 26 RFAs, 35 Docs & 7 ESI)
> Unifund CCR (14 Rogs, 26 RFAs, 35 Docs & 7 ESI)
> Lang Richert & Patch (15 Rogs, 26 RFAs, 36 Docs & 7 ESI)
> Matthew Quall (6 Rogs, 21 RFAs, 36 Docs & 7 ESI)
> EDP (23 Rogs, 25 RFAs, 32 Docs & 7 ESI)
> Ascorra (18 Rogs, 22 RFAs, 30 Docs & 7 ESI)
> Williams (18 Rogs, 22 RFAs, 30 Docs & 7 ESI)

1/25/2018. Plaintiff serves first supplement to initial disclosures.

1/26/2018. Plaintiff makes supplemental document production.

2/15/2018. Unifund Portfolio A, Unifund CCR, Lang Richert & Patch, and Matthew Quall serve their discovery objections and responses.

3/01/2017.   Unifund produces 236 pages of documents. Quall produces 168 pages of documents.

3/16/2018.   Defendants EDP, Ascorra, and Williams serve responses and objections to plaintiff's discovery.

4/04/2018.   Unifund serves plaintiff with discovery set number one, consisting of 22 document demands, 20 interrogatories, and 18 requests for admission.

4/13/2018.   Unifund makes a supplemental document production of 34 pages; Quall makes a supplemental document production of 27 pages.

4/13/2018.   Defendants EDP, Williams, and Ascorra make their initial disclosures and serve 30 pages of documents.

5/03/2018.   Plaintiff's counsel Trueblood sends meet and confer letter to defense counsel Narita regarding Unifund/Quall defendants' deficient disclosures and discovery.

5/21/2018.   Plaintiff serves responses to Unifund CCR's first set of discovery, and 20 pages of documents, with a privilege log.

6/15/23018.   Unifund serves a second set of interrogatories and requests for admission.

6/20/2018.   Unifund notices the depositions of Jasmine Bidwal (plaintiff's wife), Kaur Amarjeet (his mother) and Hardial Singh (his father).  Unifund sends process servers out with subpoenas, who fail to serve the third-party witnesses in time for the deposition dates.

6/26/2018.   EDP serves first set of discovery on plaintiff (25 document demands, 15 RFAs, 24 Rogs).

7/06/2018.   EDP serves 2nd set of discovery on plaintiff (document demands, RFAs, Rogs).

7/14/2018.   Plaintiff serves amended Rule 26 disclosures.

7/17/2018.   Plaintiff responds to Unifund's second set of discovery.

7/19/2018.   Plaintiff's objections to deposition of Hardial Singh.

7/26/2018.   Plaintiff's counsel emails EDP counsel's regarding deficiencies in EDP's responses to plaintiff's second set of discovery.  EDP's counsel does not respond.

8/06/2018.   Plaintiff's counsel makes phone call and second email to EDP's counsel re plaintiff's 2nd set of discovery.  No response from EDP.

8/07/2018.   Plaintiff serves objections to EDP's second set of discovery.

8/15/2018.   Unifund/Quall/LRP serve their initial disclosures.

8/22/2018.   Unifund serves second set of deposition notices including document demands, for Plaintiff, and his wife, father and mother.

8/24/2018.   Unifund CCR, Quall and Unifund Portfolio A serve amended responses to plaintiff's document demands, in response to meet and confer.

8/24/2018.   Plaintiff's counsel Trueblood sends meet and confer email to Unifund/Quall defendants to set up Rule 37 conference re remaining deficiencies in Unifund/Quall defendants' discovery responses and initial disclosures.

9/07/2018.   Unifund makes supplemental document production of 44 pages.

9/11/2018.   Court orders joint deposition schedule to be filed (Docket No. 97).

9/19/18.  Notice of settlement filed.

D.   Present Motion For Attorneys Fees and Costs

In the settlement agreement, the parties stipulated that plaintiff is the prevailing party in this action, under his FDCPA and Rosenthal Act claims. Trueblood Decl., Exh. 3. He is accordingly entitled to his attorneys fees and costs under those statutes. The only question that remains is the amount to be awarded. Plaintiff seeks a fee award of $359,865, which represents a base "lodestar" of $179,932.50, with application of a 2.0 lodestar multiplier.  Plaintiff's costs are $2,267.48.

Each of plaintiff's counsel are consumer law specialists, and have extensive background and experience in these cases.  Their hourly rates have been approved by many courts. The requested hourly rates are reasonable in the marketplace, as confirmed by recognized attorneys fees expert John O'Connor.  See O'Connor Declaration.

The amount of hours expended by plaintiff's counsel was also reasonable. Defendants hired sophisticated FDCPA defense counsel and the resulting vigorous defense escalated the time spent by plaintiff's counsel in response. Defendants

consistently chose litigation over settlement, rejecting numerous settlement offers from plaintiff – which were very near the ultimate settlement figures reached at the end of the case, a year-and-a-half later.

Plaintiff also seeks a 2.0 multiplier on lodestar, under authority of Ketchum v. Moses, 24 Cal.4th 1122 (2001), and federal law. Ketchum permits a lodestar enhancement for accepting contingent risk, turning down other work, and exceptional results. All of these factors apply in this case. The FDCPA and Rosenthal Act fee shifting provisions were designed to attract competent counsel to enforce the statutes. If a fully compensatory award were denied, and plaintiff's attorneys were not rewarded for taking on the contingent risk they did, these important public interest cases will not attract competent counsel to represent consumers, and the consumer protection intent of the statutes will be defeated.

## II. ARGUMENT

A. Plaintiff Is The "Prevailing Party" Entitled To Fees Under The FDCPA and Rosenthal Act

The complaint alleges that plaintiff is entitled to recover his attorneys fees and costs under the fee-shifting provisions of the FDCPA, and the Rosenthal Fair Debt Collection Practices Act. 2AC, ¶¶ 51, 60; see Civil Code § 1788.17 and 1788.30(c); 15 U.S.C. § 1692k(a)(3).

Defendants agreed in the settlement that plaintiff is the prevailing party under these claims, and that defendants shall pay plaintiff's attorneys fees and costs as determined by the Court. Trueblood Decl., Exh. 3, ¶ 3. Thus by statute and agreement, plaintiff has prevailed in the action, and is now entitled to his attorneys fees and costs.

B. The Court Should Use The Lodestar Adjustment Method to Calculate the Fee Award

Plaintiff has prevailed on both federal and state law claims. Under both federal and state law, the court uses the "lodestar" approach in calculating a fee award under a fee-shifting statute.

Under the federal lodestar approach, a district court must start by determining how many hours were reasonably expended on the litigation, and then multiply those hours by the prevailing local rate for an attorney of the skill required to perform the litigation. Moreno v. City of Sacramento, 534 F.3d 1106, 1111 (9th Cir. 2008). Under federal practice, the hourly rate for the prevailing attorneys is to be calculated by considering the novelty and difficulty of the issues, the skill required to try the case, whether or not the fee is contingent, the experience held by counsel, and fee awards in similar cases. Id at 1114.

The district court may then adjust the lodestar upward or downward based on a variety of factors. Id at 1111. Once calculated, there is a "strong presumption" that the lodestar figure is reasonable, and therefore, "should only be enhanced or reduced in rare and exceptional cases." Fischer v. SJB-P.D. Inc., 214 F.3d 1115, 1119 n.4 (9th Cir. 2000). In deciding on the adjustment, the district court considers the 12 factors set out in Kerr v. Screen Guild Extras, Inc., 526 F.2d 67, 70 (9th Cir. 1975), cert. denied, 425 U.S. 951 (1976). Out of these factors, the Supreme Court has found that "the most critical factor is the degree of success obtained." Hensley v. Eckerhart, 461 U.S. 424, 436 (1983).

California law also adopts the lodestar approach, slightly modified from the federal approach, and more liberal in the application of multipliers. In Ketchum v. Moses, 24 Cal.4th 1122, the California Supreme Court re-affirmed that in statutory fee-shifting cases, the lodestar adjustment method is the proper way to calculate fee awards: "Under Serrano III, a court assessing attorney fees begins with a touchstone or lodestar figure, based on the 'careful compilation of time spent and reasonable hourly compensation of each attorney…involved in the presentation of the case.'" Id. at 1132-33. With respect to the hourly rates, Ketchum holds that the trial court should use the "hourly prevailing rate for private attorneys in the community conducting non-contingent litigation of the same type." This means the

"hourly amount to which attorneys of like skill in the area would typically be entitled." Id. at 1133.

The Supreme Court in Ketchum also re-affirmed the application of lodestar multipliers in statutory fee awards. Ketchum makes it clear that unless the statute expressly provides otherwise, the trial court may apply a multiplier to the lodestar in determining the appropriate award. 24 Cal. 4th at 1133. In deciding what multiplier to use, the trial court may take into account various factors which include the contingent nature of the representation, exceptional results, and the lawyer's inability to take other cases. Id.

### 1. The Court Should Calculate The Lodestar Using The Requested Hourly Rates In Counsel's Declarations

The lodestar should be calculated using prevailing hourly rates for comparable legal services in the community. Ketchum, 24 Cal.4th at 1133; Serrano v. Unruh, 32 Cal.3d 621, 643 (1982) ("Serrano IV"). Plaintiff requests $725/hour for Mr. Trueblood, $600/hour for Mr. Stempler, and $550/hour for Mr. Block. Using these rates, the base lodestar amount is $179,932.50.

**Rates for Alexander Trueblood, Lead Counsel**

Mr. Trueblood, plaintiff's lead counsel, has 28 years of experience, and is a nationally known specialist in consumer law, including FDCPA litigation. His requested rate of $725 per hour is reasonable and well within the range of hourly rates charged by lawyers of similar age and experience who have non-contingent specialized civil litigation practices in the Bay Area. See Trueblood Decl., ¶¶ 8-11; O'Connor Decl., ¶¶ 31-41. Mr. O'Connor opines that Mr. Trueblood's rate is a "median rate" and "squarely on the mark" for the services of lawyers in this market with similar experience, skill, and reputation. O'Connor Decl., ¶¶ 31, 33, 36. Moreover, Mr. Trueblood's requested $725 rate is consistent with past federal and state court decisions approving his rates. Trueblood Decl., ¶ 11. For example, Mr. Trueblood was awarded an hourly rate of $675 two years ago, by Hon. Harvey

Schneider (Ret.), in an individual consumer protection case, after a battle of dueling experts.  See O'Connor Decl., ¶ 38, Exh. C.  Judge Schneider is a former Los Angeles Superior Court judge who founded LASC's complex litigation department.

Mr. Trueblood's rate is also consistent with his past FDCPA cases. In 2008, the United States District Court, Central District of California approved an hourly rate of $495 in an FDCPA case, after contested fee proceedings.  O'Connor Decl., Exh. E. In another contested FDCPA fee proceeding, the Los Angeles Superior Court (Hon. Maureen Duffy-Lewis) approved Mr. Trueblood's 2008 hourly rate of $495.  See O'Connor Decl., ¶ 37, Exh. B.

Mr. O'Connor opines that with ten years of reasonable increases, and in the current rate environment, Mr. Trueblood's 2008 rate of $495 should now be between $700 and $750.  O'Connor Decl., ¶ 37.

### Rates for Robert Stempler

Mr. Stempler has over 20 years' experience in representing consumers in debt collection harassment matters.  Admitted to practice in 1992, Mr. Stempler has developed his litigation skills, protecting the legal rights of individuals in State Superior and U.S. District Courts, often applying the Fair Debt Collection Practices Act and Fair Credit Reporting Act, among the many statutes enacted to protect consumer rights.  Mr. Stempler started his consumer law firm in 1997, after practicing law at other law firms.

Mr. Stempler's request of $600 per hour is reasonable and appropriate for this case and the venue. It is within the range of hourly rates charged by other lawyers in the non-contingent specialized civil litigation practice. See O'Connor Decl., ¶¶ 42-48. Mr. Stempler's requested rate is consistent with past court decisions approving his rates on contested fee applications, in individual FDCPA cases like the one at bench. In 2008, U.S. District Judge Otis D. Wright, overruled objections to Mr. Stempler's rate in an FDCPA case, "find[ing] that $350 is a reasonable hourly rate for Mr. Stempler." See O'Connor Decl., Exh. E.  Likewise,

in 2003, in <u>Hernandez v. Erin Capital Management, LLC</u>, Case No. SACV 10-1695 AG (RNBx) (C.D. Cal. 2011), Mr. Stempler was awarded an hourly rate of $350 by the district court. <u>See</u> O'Connor Decl., Exh. F.

With 8 and 11 years respectively of legal fee increases since the <u>Miller</u> and <u>Hernandez</u> awards, Mr. Stempler's prior rate $350 per hour is equivalent to an award of $600 today. O'Connor Decl., ¶ 46.

### Rates for Brandon Block

Mr. Block has nearly 20 years' experience in consumer, auto finance and debt collection matters, having practiced at two respected national defense law firms before opening his own law practice in 2007 to focus on representing consumers. <u>See</u> Block Decl., ¶¶ 1-5. Mr. Block's requested hourly rate of $550 is reasonable and well within the range of hourly rates charged by lawyers of similar age and experience who have non-contingent specialized civil litigation practices in California. <u>See</u> Block Decl., ¶ 8. Mr. O'Connor opines that Mr. Block's rate is reasonable. O'Connor Decl., ¶¶ 49-51. Moreover, Mr. Block's requested rate is consistent with past court decisions approving his rates in contested fee applications in individual FDCPA cases like this one. In 2009, the Los Angeles Superior Court approved Mr. Block's then hourly rate of $375 as "more than reasonable", and applied a 1.5 multiplier to Mr. Block's base lodestar, for an effective hourly rate of $562.50. <u>See</u> Block Decl., ¶ 9 (7:15-20). In 2013, the Sacramento Superior Court approved Mr. Block's 2012 and 2013 hourly rates of $425 and $465, respectively. <u>See</u> <u>Id.</u>, ¶ 7 (7:1-7).

    2.    *The Lodestar Calculation Should Include All The Time That Plaintiff's Counsel Spent On The Case.*

The time spent by plaintiff's attorneys is shown in the time records attached to their respective declarations. Those records show that plaintiff's counsel spent a total of 273.6 hours of attorney time on this case, or an average of 15.2 hours per month over the course of eighteen months. All of that time should be included in

1 the lodestar calculation, as it ordinarily includes compensation for "all hours
2 reasonably spent". Serrano v. Unruh ("Serrano IV") 32 Cal.3d 621, 639 (1982).

3     The time spent on the case was reasonable.  Plaintiff employed two attorneys
4 to the defendants' four attorneys.  Simmonds & Narita was defense lead counsel,
5 and bills itself as "A Complex Litigation Law Firm."  The defendants thus
6 recognized from the beginning that this case was complex, and hired FDCPA
7 defense specialists *apropos* to the case they were defending.

8     The defense was indeed vigorous and stubborn. A party cannot litigate
9 tenaciously and then be heard to complain about the time necessarily spent by the
10 opposing party in response. Copeland v. Marshall, 641 F.2d 880, 904 (D.C. Cir.
11 1980) ("Obviously, the more stubborn the opposition the more time would be
12 required" by opposing counsel); Camacho v. Schaeffer, 193 Cal.App.3d 718, 724
13 (1987)(recognizing that appellant had a legal right to take the positions he did, but
14 appellant "could not then complain when his litigation posture generated additional
15 legal expenses for respondents"); Stokus v. Marsh, 217 Cal.App.3d 647, 657
16 (1990)(upholding a $75,000 fee award in an unlawful detainer action involving
17 $6,166 in damages, based on the stalwart defense).

18     The settlement history shows that defendants refused to pay a compensatory
19 settlement amount until the very end of the case. Only after plaintiff's counsel
20 educated them with discovery and effective legal advocacy, did defendants reverse
21 course and settle for almost exactly what plaintiff had demanded in the beginning.

22     Right after this case was filed, on June 5, 2017, plaintiff offered to settle for
23 approximately $24,000 plus dismissal of the state court case and payment of
24 plaintiff's attorneys fees/costs. Trueblood Decl., Exh. 8. Defendants ignored this
25 offer, and six months later in January, 2018, were still demanding that plaintiff
26 dismiss the case with no payment whatsoever. Id, Exh. 11. The final settlement in
27 September, 2018, eighteen months after filing, was for $24,000 ($17,000 plus
28 dismissal of the state court case, a $7,500 value) and payment of plaintiff's

attorneys fees/costs. Trueblood Decl., Exhs. 3 and 15. Clearly, defendants should and could have settled this case at the outset, but instead chose to fight and give plaintiff the toughest time possible, only to capitulate in the end after running up plaintiff's attorneys fees.

Finally, time spent by plaintiff's counsel on the fee motion should also be included in the lodestar calculation. In Ketchum, our Supreme Court reaffirmed Serrano IV's holding that "the purpose behind statutory fee authorizations – i.e., encouraging attorneys to act as private attorneys general and to vindicate important rights affecting the public interest – will often be frustrated, sometimes nullified, if awards are diluted or dissipated by lengthy, uncompensated proceedings to fix or defend a rightful fee claim." Ketchum, 24 Cal.4th at 1133 (citation and internal quotation marks omitted).

C.   The Court Should Award A Multiplier On Lodestar

As noted above, California fee-shifting statutes, including the Rosenthal Act, permit the award of a multiplier unless the legislature has expressly provided otherwise. Ketchum, 24 Cal.4th at 1135-1136. The base lodestar may also be adjusted upwards based on the Kerr factors, under the FDCPA claim. Multipliers are needed to provide financial incentives for lawyers to handle these public interest cases. These incentives must be brought "into line with incentives" that exist for non-contingent fee cases. "[A] contingent fee contract, since it involves a gamble on the result, may properly provide for a larger compensation than would otherwise be reasonable." Ketchum, at 1132, quoting from Rader v. Thrasher, 57 Cal.2d 244, 253 (1962). The contingent fee must be higher than a regular hourly rate fee because the attorney is taking the risk of not being paid at all, and he is loaning his services. Id.

Congress and the California Legislature provided for statutory fees in order to encourage attorneys to act as private attorneys general and to vindicate important rights that affect the public interest. In Ketchum, the important public interest was

to attract attorneys who would fight SLAPP suits. 24 Cal.4th at 1131. Under the FDCPA, "attorney fees should not be construed as a special or discretionary remedy; rather the Act mandates an award of attorney fees as a means of fulfilling Congress's intent that the Act should be enforced by debtors acting as private attorneys general." Savage v. NIC, Inc., No. 2:08-cv-01780-PHX-JAT, 2010 WL 2347028, at *2 (D. Ariz. 2010) (quoting Graziano v. Harrison, 950 F. 2d 107, 113 (3d Cir. 1991); see also Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 978 (9th Cir. 2008).

Awarding a 2.0 multiplier in this specific case will advance the goal of encouraging private counsel to represent consumers with valid claims of debt collection abuse. The Legislature declared that the purpose of the Rosenthal Act is to "prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts" because such practices "undermine the public confidence which is essential to the continued functioning of the banking and credit system and sound extensions of credit to consumers." Cal. Civ. Code §§ 1788.1(a) & (b). To attract attorneys who will assist in vindicating these stated purposes of the Rosenthal Act, the Legislature provided for one-way attorney fee shifting in favor of consumer plaintiffs. Id. §§ 1788.30(c); 1788.17.

A lodestar multiplier is justified here based on three specific factors enumerated in Ketchum v. Moses. First, there is the contingent risk factor. Plaintiff's attorneys assumed the risk of their clients losing the case (Trueblood Decl., ¶ 13, Stempler Decl. ¶ 15), loaned their services for over a year-and-a-half, and should be compensated for that risk. Ketchum, 24 Cal. 4th at 1132.

Second, plaintiff's counsel were precluded from other employment due to the necessity to block out time to litigate this well-defended case. Id. at 1132 (court should consider whether counsel was prevented from other employment); Trueblood Decl., ¶ 13; Stempler Decl., ¶ 15.

Last but not least, plaintiff's counsel obtained exceptional results in this matter. Ketchum, 24 Cal. 4th at 1132; Kerr, at 526 F.2d at 70.  FDCPA cases are often brought for technical violations, and lead to very modest damages awards.  Here, Mr. Bidwal suffered only a few hundred dollars in out-of-pocket damages, but ultimately achieved an excellent recovery of $17,000 for his emotional distress.  He also gained an additional $7,500 benefit when Unifund agreed to dismiss the state court action and waive his alleged credit card debt.  This result was achieved in the face of an able defense, where the defendants hired FDCPA defense specialists, refused to pay anything, and in fact insisted that plaintiff dismiss his complaint and accept nothing in settlement.

The legal measure of success is not just monetary.  Hensley v. Eckerhart, 461 U.S. 424, 436 (1983)("Success must be measured not only in the amount of the recovery but also in terms of the principle established and the harm checked"); Morales v. City of San Rafael, 96 F.3d 359, 363 (9th Cir. 1996) ("[S]uccess may be measured by 'the significance of the legal issues on which the plaintiff claims to have prevailed' and the 'public purpose' the plaintiff's litigation served," quoting Farrar v. Hobby, 506 U.S. 103, 117 (1992)). Here, plaintiff has obtained a significant FDCPA settlement that will serve to deter defendants from the pernicious practice of sewer service -- abusing the court system and taking secret judgments against unrepresented consumers who often have difficulty finding counsel to extract them from the fraud.  Indeed, the facts of this case suggest that defendants only stopped their oppressive leveraging of the void judgment, when Mr. Bidwal hired counsel.  Hopefully, this case has served notice to debt collectors and their attorneys that sewer service does not pay.

In order to practice effectively in this area, an attorney needs to develop an expertise in it.  Few attorneys will do that unless there are adequate financial incentives.  Otherwise, hourly rates for defending corporate clients are the way to go.  That was not what the Legislature or Congress wanted to happen, nor is it what

18
MEMO OF POINTS AND AUTHORITIES IN SUPPORT  OF MOTION FOR ATTORNEYS FEES

the courts have endorsed.  The message of Ketchum is clear:  multipliers can and should be awarded in these cases. Expert John O'Connor agrees that a 2.0 lodestar multiplier is appropriate in this case.  O'Connor Decl., ¶¶ 57-58.

### III.  CONCLUSION

For all the foregoing reasons, plaintiff respectfully requests that he be awarded $359,865 in attorneys fees, and $2,267.48 in costs.

Dated:  January 28, 2019                    Respectfully Submitted,

                                            TRUEBLOOD LAW FIRM


                                            By:    /s/_____
                                                   Alexander B. Trueblood

                                            Attorneys for Plaintiff
                                            JAGDEEP BIDWAL

MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEYS FEES