ALEXANDER B. TRUEBLOOD (Cal. Bar No. 150897)
10940 Wilshire Boulevard, Suite 1600
Los Angeles, California 90024
Telephone:  (310) 443-4139
Facsimile:  (310) 943-2255

ROBERT STEMPLER (Cal. Bar No. 160299)
8200 Wilshire Blvd, Suite 200
Beverly Hills, CA 90211-2331
Telephone (323) 486-0102
Fax: (323) 488-6895

BRANDON A. BLOCK (Cal. Bar No. 215888)
433 North Camden Drive, Suite 600
Beverly Hills, CA 90210
Telephone (310) 887-1440
Facsimile: (310) 496-1420

Attorneys for Plaintiff
JAGDEEP BIDWAL

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAGDEEP S. BIDWAL,<br><br>                    Plaintiff,<br><br>          vs.<br><br>UNIFUND CCR PARTNERS, UNIFUND PORTFOLIO A, LLC, QUALL CARDOT LLP, MATTHEW W. QUALL, LANG, RICHERT & PATCH, A PROFESSIONAL CORPORATION, ELECTRONIC DOCUMENT PROCESSING, INC., and JULIO ASCORRA,<br><br>                    Defendants. | Case No:  3:17-CV-2699-LB<br><br>**DECLARATION OF JOHN D. O'CONNOR IN SUPPORT OF PLAINTIFF JAGDEEP S. BIDWAL'S MOTION FOR AN AWARD OF ATTORNEYS FEES AND COSTS** |

## DECLARATION OF JOHN D. O'CONNOR

I, John D. O'Connor, declare as follows:

1.     I am an attorney licensed to practice law in all courts in the State of California, and have been so licensed since December 1972.  I am currently the principal of O'Connor and Associates, a law firm consisting of myself and two associates that specializes in commercial and tort litigation.  I have forty-seven years of significant trial experience, including over seventy jury trials and numerous arbitrations.  In addition to my litigation practice, I have been retained as an attorneys' fee expert on approximately one hundred and fifty occasions and have served as a consulting expert on many more occasions.

## BACKGROUND, QUALIFICATIONS AND EXPERIENCE

2.     The following is a brief summary of my background and qualifications.

3.     I attended The University of Notre Dame in South Bend, Indiana, where I graduated *magna cum laude* in 1968. In 1972, I graduated *cum laude* from the University of Michigan Law School, where I was a member of the Order of the Coif and Associate Editor of the Michigan Law Review.  I was admitted to the California bar in 1972.  A copy of my *Curriculum Vitae* is attached hereto as **Exhibit A**.

4.     After being admitted to the California bar, I held successive positions where my practice focused on trial litigation.  In 1972 and 1973, I was an associate with the trial firm of Belli, Ashe and Choulos, where I assisted Mr. Melvin Belli in the trial of several large cases and tried three cases on my own.

5.     From January 1974 through December 1979, I was an Assistant United States Attorney for the Northern District of California in San Francisco.  In that capacity, I tried white-collar criminal cases as well as a variety of civil matters.  Much of my civil work with the U.S. Attorney's office involved litigation alleging violations of statutes and regulations designed to protect the consumer, such as those enforced in response to the energy crisis of 1974-78, including gasoline pricing rules and regulations.

6.     While I worked in the United States Attorneys' Office, I was assigned both criminal and civil cases.  Accordingly, I gained significant experience in governmental and administrative

1

law litigation, including a number of civil rights cases.  For instance, I represented the government in the class action brought against the Naval Air Rework Facility in Alameda, California alleging discrimination in hiring and promotion of women and minorities, which was significantly protracted and complex litigation involving significant attorneys' fee issues.  *See Saunders v. Clayton,* 629 F.2d 596 (9th Cir. 1980), and *Saunders v. Naval Air Rework Facility (N.A.R.F.)*, 1981 U.S. Dist. LEXIS 17852 (N.D. Cal. Sept 4, 1981), where I worked on the underlying fee disputes on behalf of the U.S. government. The *Saunders v. Clayton* case, which I litigated at the District Court level, established significant case law denying fees on unsuccessful claims in an otherwise successful case.

7.      In 1980 and 1981, I was a senior associate at the prominent San Francisco firm of Brobeck, Phleger and Harrison, where I represented, among other firm clients, Wells Fargo Bank.

8.      From 1982 through 2001, I was a principal and managing partner of the law firm of Tarkington, O'Connor & O'Neill, where our clients were mainly insurance companies, corporate risk management departments, numerous local governmental entities, and federal entities such as the FDIC, FSLIC, RTC, NCUA, and the United States government.  On behalf of financial institutions, and the government as Receiver or Conservator of financial institutions, I frequently defended various forms of "lender liability" suits.

9.      From 2001 through 2006, I was Special Counsel and a Director (equivalent in a legal corporation to a partner) for the Howard Rice firm, now merged with Arnold and Porter.  At Howard Rice I pursued a high-stakes litigation practice, including defense of R. J. Reynolds Tobacco Company, intellectual property disputes, and financial/professional services litigation.

10.      In late 2006, I formed O'Connor and Associates, a litigation boutique firm engaging in both business and tort litigation, as well as expert work in attorney fee analysis.

11.      In 1982, I began managing the Tarkington office and as our firm quickly grew to over eighty lawyers, I regularly kept abreast of billing standards in the community, and regularly subscribed to specialized publications geared to law firm management, such as the Altman and Weil annual reports and the monthly published Partners' Report.  I also regularly reviewed more widely published legal periodicals.

12.     As written billing guidelines became in vogue for institutional clients in the mid-eighties, I participated heavily in working with our institutional clients in government, insurance, finance, and other large businesses to establish and implement practical billing standards.  I regularly consulted with these clients about their perception of the positive and negative in our billings, and where appropriate, remedied the same.

13.     I have kept abreast of the billing rates in the Bay Area, California, and generally throughout the country since 1982.   Because we represented clientele in different business and governmental sectors, it was important to me to be conversant about rates throughout the litigation field ranging from premium to lower, more commoditized rates.

14.     Because our practice at the Tarkington firm often involved coverage, legal malpractice, and reinsurance and excess monitoring work, we reviewed the billings of a wide variety of firms in our regular practice, including premium-rate billings, lower, highly negotiated insurance defense charges, and standard business litigation billings with rates falling between these two groups.

15.     In 1983 and 1984, I litigated a large fee case while with the Tarkington firm against the Heller Ehrman firm, on behalf of Sonoma County, in a class action prison case involving the constitutionality of various conditions of confinement in the Sonoma County jail.

16.     Although I have been involved in a significant amount of legal fee review, negotiation, and litigation since 1977, my involvement in legal fee dispute work increased significantly in 1989.  In that year, I was the Tarkington partner in charge of our work with failed and failing financial institutions on behalf of the FDIC, FSLIC, RTC, and NCUA.  At that time, we had performed extensive work in connection with the failed Golden Valley Bank, Turlock, California, then in Receivership under the aegis of the FDIC.  The insurance carrier for the bank insisted that we advise the government to release the insurance carrier from its defense obligations with a nominal payment.  After our refusal, the insurance company subjected the Receiver and our firm to numerous audits in an unsuccessful attempt to force the government to release the carrier from its obligations.  At this point I necessarily became immersed in the various billing standards prevalent in the community.

3

17.     During these years of legal fee disputes, I spent the majority of my time dealing with the developing field of legal "auditing" and related litigation.  As a result, I gained a wide knowledge of auditing practices, prevailing billing standards, and approaches employed by legal fee experts, auditors, and litigators.

18.     Due to my growing expertise in the legal fee and auditing issues, during the years 1991 through 2001, I consulted with numerous law firms throughout the country who were seeking my advice on audit criticisms leveled against their practices, almost invariably involved in large fee disputes.  I also consulted on numerous occasions with fee payors in fee disputes.  I continue this work as a subspecialty of my litigation practice through the present time.  I am a member of, and lecture at continuing education seminars sponsored by, the National Association of Legal Fee Analysis ("NALFA"), a society dedicated to both continuing education and development of legal fee billing standards.

19.     From late 2001 through July 2006, as noted above, I was employed with the San Francisco firm of Howard Rice as a Special Counsel and Director, practicing within the litigation department. While at Howard Rice, I was selected as a JAMS arbitrator on a three-arbitrator panel, for an asbestos fee dispute involving over $2 million in claimed fees.

20.     At Howard Rice, we kept informed about both premium rates in the area for "AmLaw 500" firms and rates charged by the wider sector of smaller market-driven business firms, so that we could in turn appropriately set ours on an annual basis.  Because we did work throughout California, our surveys involved both Northern California and Southern California, as well as national firm rates.  It has been my experience that the rate structure of the San Francisco Bay Area is virtually identical to that in the greater Los Angeles area.  My present fee work involves both Northern and Southern California cases, as well as other cases throughout the country.

21.     Since July 2006, I have practiced on my own with several associates under the name of O'Connor and Associates.  My practice continues to focus on complex business litigation, including real estate, construction, and contract/fraud, and including an active trial practice, with consistent work as well as a litigation fee expert. I have been employed as a fee expert on over one hundred and fifty occasions.

22.     As an expert witness and consultant, I have reviewed the billings of lawyers preparing for and/or trying large, complex financial sector cases, including Court cases.  For instance, *Duran v. U.S. Bank,* Alameda Superior Court, Case No. 2001-035537, tried before Judge Freedman in Alameda County, was an eighty-plaintiff class action case, the first class action wage and hour case ever tried in California. In that case, Judge Freedman accepted my opinion as to applicable hourly rates, noting in his opinion that he relied on the undersigned for guidance in this regard:

> The Court finds that Plaintiffs have presented extensive evidence that the hourly rates their attorneys have requested are within the range of rates charged by and awarded to attorneys of comparable experience, reputation, and ability for comparably complex litigation. CHMC, 97 Cal.App.4th 740, 783. That evidence includes: ... *(5) persuasive expert testimony presented by Mr. John D. O'Connor... Based on the evidence before the Court including declarations submitted in support of Plaintiffs' Motion…* In marked contrast to the Court's findings with respect to Mr. Schratz, the Court finds Mr. O' Connor's declaration to be considerably more persuasive in assessing the relevant issues before this Court. The Court finds Mr. O'Connor's opinions related to the lodestar analysis to be useful, insightful and well-reasoned.

(*Duran, supra,* Alameda Superior Court, Case No. 2001-035537, Court's Order dated December 12, 2010, p. 30.)

23.     I have significant experience in financial institution litigation.  While at the Brobeck firm, I represented Wells Fargo Bank in several cases.  While with the Tarkington firm, I represented numerous failed and/or failing banks, savings and loans and credit unions, taking over their litigation portfolios as well as instituting new litigation against borrowers, insurers, and professionals as necessary.  While at the Howard Rice firm, I worked on several cases involving financial institution issues.

24.     I previously served as an expert consultant in *Pena v. Huntington Beach Nissan*, Los Angeles Superior court, Case No. BC 651671, and *Tan v. Wheels Financial Group, et al.*, Alternative Resolution Centers, LLC, ARC Case No. 78M4930, where I was able to review the work of Mr. Trueblood extensively at the conclusion of extensive arbitration proceedings.

25.     I have served as an expert witness in numerous cases involving financial or credit issues.

26.     I believe that my litigation experience is helpful in determining the reasonableness of fees for staffing, pretrial preparation, and trial of cases litigated both in Court and in an arbitral forum.

27.     I also believe my experience litigating with a large, top-tier firm, Howard Rice a midsize firm, Tarkington, and my present small firm, gives me, as an expert examining fees of all levels of firms, an insight into the appropriate rates to be sought here.

28.     Accordingly, I believe that I am an expert capable of analyzing the fee petition in this case.

## ANALYSIS AND OPINION

29.     In this case, Plaintiff's counsel filed an action for violations of the Fair Debt Collection Practices Act and the Rosenthal Fair Debt Collection Practices Act against a debt collection agency (Unifund), its collection lawyers (Quall Cardot and Lang Richert & Patch), and their process server (EDP) who furtively obtained a collection default judgment in Los Angeles by filing false affidavits of service with the court, despite their knowledge that Plaintiff was not actually served.  I need not recite the facts of this case, with which the Court is familiar.

30.     Even though the facts giving rise to the instant litigation occurred in Los Angeles, the applicably locality for determining reasonable rates is San Francisco.  I note that the rate structure of the San Francisco Bay Area is virtually identical to, if not slightly higher than, the rate structure in the greater Los Angeles area.  Therefore, any discussion of Los Angeles rates below is also applicable for determining the reasonable rates in the greater San Francisco Bay Area.

31.     I have reviewed the invoices of the Trueblood Law Firm, the Consumer Law Office of Robert Stempler, and the Law Offices of Brandon A. Block for this case and believe that both the requested rates and the hours billed are reasonable.  Because of the skill and efficiency of Mr. Trueblood, Mr. Stempler, and Mr. Block, I also opine that some multiplier is appropriate.

### Mr. Trueblood's Requested Hourly Rate is Reasonable

32.     The first issue I will discuss is the reasonableness of Mr. Trueblood's rate of $725 per hour, which I opine is a median rate in the applicable cohort of law firms.

33.   As I understand and customarily address the issue, petitioning lawyers should be paid commensurate with the market for other lawyers of similar skill, experience, and reputation.

34.   Obviously, when a small plaintiffs' firm's billings are at issue, my goal is to slot its rates into the appropriate level as charged by firms with set rate structures, and applying this standard sometimes can be difficult, in that it may be unclear which set of prevailing rates is best applied to the particular petitioning counsel.  However, in my opinion, that analysis is not difficult here.  Mr. Trueblood deserves rates squarely in the middle range of the "AmLaw 500" firms practicing in large metropolitan areas such as Los Angeles and San Francisco.  AmLaw 500 firms are the largest 500 firms in the country, the rates for which are generally well known.

35.   In the Los Angeles area, the cohort of firms charging these AmLaw 500 rates would be Irell & Manella, Loeb & Loeb, O'Melveny, Gibson Dunn, Jones Day, and Orrick, to name a few.  The rates charged by these larger firms, most of them with a national reach, are generally similar to those charged by the very fine small and mid-sized firms in the Los Angeles area, such as the Trueblood Law Firm.

36.   To be sure, within these firms are a number of lawyers who charge "super premium" rates from $900 to $1,500 per hour, for certain high-value "niche" services, which rates are correctly set out in the moving papers.  These "niche" rates are sometimes charged by litigators who are perceived to be of exceptional quality.  I do not believe that these "super premium" rates apply here, because there are few factors that would argue for the services of petitioning Counsel to charge them.  Indeed, most lawyers within AmLaw 500 firms do not charge "super premium" rates.

37.   However, that said, the rates sought by petitioning Counsel are not "super premium" rates, but, rather, are rates one would expect when hiring any of the reputable business litigation firms in Los Angeles or San Francisco.  The rate sought by Mr. Trueblood at $725 is squarely on the mark.  When comparing the services of Mr. Trueblood to those having similar skill, experience and reputation, there are several reasons that his services deserve these standard, big-firm rates.

38.   Returning to Mr. Trueblood's requested rate of $725 per hour, it is, in my opinion, consistent with previous fee awards. Attached as **Exhibit B** is a fee award in the case *Godfrey, et al. v. Hyundai Motor Finance Company, et al.*, Los Angeles Superior Court, Case No. BC373078,

7

1    in which the Honorable Maureen Duffy-Lewis awarded Mr. Trueblood a rate of $495 in January

2    2009.  With ten years of legal fee increases since then, this award of $495 per hour is equivalent to

3    an award of $700-$750 today. (*See* **Exhibit B.**)

4       39.    In January 2017, Judge Harvey A. Schneider (Ret.) in *Tan v. Wheels Financial*

5    *Group, Inc.*, *supra,* awarded Mr. Trueblood $675 per hour two years ago, which would translate

6    into an award of approximately $725-$750 today, since a rate increase of $50-$75 per hour would

7    be expected over these past two years, in which the legal market has been highly active, with little

8    downward rate pressure.  Attached as **Exhibit C** is the award by Judge Harvey A. Schneider (Ret.)

9    in *Tan v. Wheels Financial Group, Inc.*

10      40.    Lastly, I note that reasonableness of Mr. Trueblood's hourly rate is further supported

11   by McGuireWoods, LLP's reasonable rates cited by Mr. McDonald in *VW Credit, Inc. v. Jillian*

12   *Speer*, Los Angeles Superior Court, Case No. SC128784, a debt collection case.  Attached as

13   **Exhibit D** is the Declaration of Chris M. McDonald in Support of Cross-Defendant VW Credit,

14   Inc.'s Opposition to Defendant/Cross-Complainant Jillian Speer's Motion to Compel ("McDonald

15   Declaration").  In the McDonald Declaration, Mr. McDonald declares that the reasonable rates of

16   certain San Francisco attorneys at McGuireWoods LLP based on the current market rates and

17   nature and experience as of August 2018 are as follows: Carolee A. Hoover (partner, 13 years'

18   experience): $690/hour; and Alexander J. Gershen (associate, 5 years' experience): $475/hr. *See*

19   **Exhibit D** at 4:4-9.

20      41.    I note that Mr. Trueblood, an attorney with approximately 28 years' experience, has

21   over two times the experience of Ms. Hoover and over five times the experience of Mr. Gershen,

22   yet Mr. Trueblood only bills his time at $35 per hour more and $250 per hour more, respectively.

23      42.    Because of the skill and efficiency displayed by Mr. Trueblood in resolving this

24   matter so effectively, together with the contingent risk taken on, in a case where the defendants had

25   adamantly refused rescission earlier, I believe some multiplier is warranted, as discussed below.

26                  Mr. Stempler's Requested Hourly Rate is Reasonable

27      43.    Turning to Mr. Stempler's hourly rate, I opine that a reasonable hourly rate is $600.

28

8

44.     Mr. Stempler has specialized in consumer-rights litigation for over twenty years with a focus in litigating in federal courts.

45.     In *Miller v Midland Funding, LLC, et al.*, Case No. CV 07-4869-ODW (AGRx) (C.D. Cal. 2007), Mr. Stempler was awarded an hourly rate of $350 in April 2008. Attached as **Exhibit E** is the fee award in *Miller v Midland Funding, LLC, et al.*  Notably, the Honorable Otis D. Wright II stated in his Order that other judges, including other Central District Court Judges, have also approved Mr. Stempler's hourly rate.

46.     Likewise, in *Hernandez v. Erin Capital Management, LLC, et al.*, Case No. SACV 10-1695 AG (RNBx) (C.D. Cal. 2010), Mr. Stempler requested an hourly rate of $350, which was uncontested by opposing counsel and awarded by the court in October 2011. Attached as **Exhibit F** is the fee award in *Hernandez v. Erin Capital Management, LLC, et al.*

47.     With 8 to 11 years of legal fee increases since the *Miller* and *Hernandez* awards, Mr. Stempler's prior award of $350 per hour is equivalent to an award of $600 today.

48.     The reasonableness of Mr. Stempler's requested hourly rate is further supported when compared to Ms. Hoover's $690 and Mr. Gershen's $475 hourly rates identified in the McDonald Declaration. See **Exhibit D**.  Mr. Stempler has over two times the experience of Ms. Hoover and over five times the experience, yet Mr. Stempler requests $90 per hour less than Ms. Hoover and only $125 per hour more than Mr. Gershen.

49.     I further note that the discrepancy between my recommended rates for Mr. Trueblood and Mr. Stempler reflect Mr. Trueblood's exceptional skills and expertise, as well as Mr. Trueblood's and Mr. Stempler's historic billing rates, and are not a reflection of Mr. Stempler's expertise and skill.  For example, in *Miller*, the Honorable Otis D. Writght II awarded Mr. Stempler his requested hourly rate of $350 and Mr. Trueblood his requested hourly rate of $495. *See* **Exhibit E**.

<u>Mr. Block's Requested Hourly Rate is Reasonable</u>

50.     Turning to Mr. Block's hourly rate, I opine that his requested hourly rate of $550 is reasonable.  Mr. Block briefly joined Plaintiff's counsel toward the end of this litigation around June 2018 to assist with the completion of discovery and preparation for trial.  Mr. Block's addition

9

to Plaintiff's counsel was a direct result of defense counsel's refusal to negotiate a settlement in good faith as well as defense counsel's vigorous defense which picked up in June and July 2018.

51.    Mr. Block has specialized in consumer protection matters for the last twenty years, opening his own consumer protection practice in 2007.

52.    In January 2017, Judge Harvey A. Schneider (Ret.) in *Tan v. Wheels Financial Group, Inc.*, *supra,* awarded Mr. Block $475 per hour.  *See* **Exhibit C**.  Mr. Block's 2017 rate of $475 would translate into an award of approximately $550 today, since a rate increase of $50 to $75 per hour would be expected over these past two years, in which the legal market has been highly active, with little downward rate pressure.

Hours Expended Are Reasonable

53.    I also opine that the hours spent by Plaintiff's counsel were reasonable and efficiently spent.

54.    In support of my opinion, I note that Plaintiff's counsel did not flail inefficiently, as have many other lawyers I have observed, or perform unnecessary work in order to increase his fees.

55.    Rather, as Plaintiff's counsel's invoices reflected, Plaintiff's counsel immediately moved into settlement in an effort to minimize the amount of attorneys' fees incurred.  In fact, Plaintiff's counsel made repeated overtures to Defendants to settle from June 2017 through September 2018 which were either ignored outright without any counteroffer or met with bad faith offers that were dead on arrival for refusal to dismiss the state court action.  When Plaintiff's counsel countered these objectionable settlement offers, Defendants again went silent.  That the September 2018 settlement agreement reflects virtually the same terms as Plaintiff's June 2017 settlement offer further establishes that the additional hours incurred by Plaintiff's counsel are the direct result of Defendants' implacable posture, and resultant litigation activities.

56.    However, due to the involvement of multiple parties and entities in Defendants' wrongful conduct and defense counsels' own brinksmanship, Plaintiff's counsel was forced to vigorously and diligently pursue Plaintiff's rights, while defense counsel attempted to dodge the Federal Rules of Civil Procedure.  I note, for example, that Plaintiff's counsel was forced to meet

10

and confer with defense counsel regarding several issues, including multiple defendants' late and deficient Initial Disclosures, deficient discovery responses, and the failure to serve mediation briefs.

57.     The total amount billed of approximately $179,932.50 for 273.6 hours of work certainly reflects an efficient disposition of this case.

<u>Plaintiff's Counsel Are Entitled to a Multiplier</u>

58.     Plaintiff's counsel is entitled to a multiplier for both the Rosenthal Act claim based on the *Ketchum* factors, and the FDCPA claim based on the *Kerr* factors. *See Ketchum v. Moses*, 24 Cal.4th 1122 (2001); *see also Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), cert. denied, 425 U.S. 951 (1976).  The relevant *Ketchum* and *Kerr* factors that support the application of a multiplier are as follows:

a.     Contingent Risk: Plaintiff's counsel entered into a contingent fee arrangement with Mr. Bidwal and bore the risk of nonpayment.

b.     Preclusion of Other Employment: Plaintiff's counsel were precluded from other employment especially in light of defense counsel's vigorous defense of this case.

c.     Exceptional Skill Displayed and Results Obtained – I note that a $17,000 settlement, dismissal of the state court action, and forgiveness of the alleged credit card debt represents an exceptional result, especially in light of the small out-of-pocket damages suffered.

59.     I opine that a 2.0 multiplier is not only appropriate, but necessary to further the goal of encouraging private counsel to represent consumers who have valid claims of debt collection abuse.

///

DECLARATION OF JOHN D. O'CONNOR

**<ins>CONCLUSION</ins>**

60.     By was of summary, I opine that Plaintiff's counsel is entitled to the following award:

| Recommended Fee Award | | | |
|---|---|---|---|
| Timekeeper | Hours | Rate | Amount |
| Mr. Trueblood | 129.3 | $725 | $93,742.50 |
| Mr. Stempler | 136.5 | 600 | 81,900 |
| Mr. Block | 7.8 | $550 | $4,290 |
| Total Hours | 273.6 | Total Lodestar | $179,932.50 |
| Multiplier | | | 2.0 |
| Total After Multiplier | | | $359,865 |
| Expenses | | | $2,267.48 |
| Total Award: | | | $362,132.48 |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on January 28, 2018 at San Francisco, California.

_____
John D. O'Connor

# Exhibit A



**O'CONNOR**
**AND ASSOCIATES**
*Special Counsel Services*

201 Mission Street, Suite 710 - San Francisco, CA 94105
T: 415-693-9960 / F: 415-692-6537 / www.joclaw.com



**JOHN D. O'CONNOR**
**201 Mission Street, Suite 710**
**San Francisco, CA 94105**
**Phone:   415-693-9960**
**Direct:   415-464-6250**
**Mobile: 415-999-2528**
john@joclaw.com

### *CURRICULUM VITAE*

**Education**

University of Michigan Law School, *cum laude* – Juris Doctorate, 1972

- Member, Michigan Law Review (1970-1972), Associate Editor (1971-1972)
- Member, *Order of the Coif* (1971-72)
- Winner of three AmJur awards as the most outstanding student in a subject.

University of Notre Dame, *magna cum laude* – A.B., 1968

**Work Experience**

Associate, Belli, Ashe & Choulos – 1972-1973

- Dealt mainly with assessing and negotiating "splits" with other attorneys of contingency fees

U.S. Attorney's Office, Civil Division – 1977-1979

- Dealt with attorneys fees, "fee-shifting" civil rights cases; assessed, negotiated, and litigated attorneys fees in both individual cases and class action cases; litigated Saunders v. NARF in the 9th Circuit

Senior Associate, Brobeck Phleger and Harrison – 1980-1981

- Working for prestigious litigation firm, learned staffing and billing procedures and protocols for large commercial cases

Managing Partner, Tarkington, O'Connor and O'Neill – 1982-2000

- Managing partner responsible for all firm billings

- Supervised billing seminars for newly graduated and recently hired lawyers within firm
- Kept current both with hourly fees charged in the community and billing protocols for various firms and cases throughout the area
- Subscribed to various periodicals such as <u>Partners Report</u> and <u>Altman & Weil</u> annual reports (Altman & Weil is a nationally known law firm consultant organization)
- Consulted with insurance executives regarding billing procedures for their companies
- Consulted with insurance claims executives regarding CUMIS issues including billing rates for various types of litigation throughout the Bay Area
- Worked with various government agencies, such as FDIC, FLIC, NCUA, and RTC regarding appropriate billing protocols, and discussed bills with government officials regarding compliance; Dealt with governmental auditors regarding same
- Consulted with insurance executives regarding CUMIS issues; was resource for those executives negotiating CUMIS fees with independent counsel
- Represented numerous entities including governmental entities, in attorneys fees litigation (e.g. in the Sonoma County jail class action litigation, litigated the fees of Heller Ehrman in a fee-shifting civil rights context)
- Defended legal malpractice cases and examined legal malpractice and other professional liability cases for clients, including the conservators and receivers of failed and failing financial institutions
- Interacted with legal counsel and claims executives for governmental and insurance clients in review and analysis of firm billings
- Dealt with <u>Brandt</u> fee issues both as a plaintiff and defendant in insurance coverage cases
- From time to time reviewed bills of firms in underlying cases while representing insurers, reinsurers and access carriers
- Significant work regarding legal fee auditing and litigation regarding legal fees and legal fee auditing, detailed below

Director (Partner) and Special Counsel, Howard Rice – 2001-2006
- Regularly apprised of market rates of competing law firms, as firm annually reset its rates
- Acquired knowledge of total fees charged on various complex cases, both by the Howard Rice firm and others

- Named arbitrator on 3-arbitrator JAMS panel regarding over $2,000,000 of asbestos billings; heard and evaluated testimony of competing fee experts and auditors

Principal, O'Connor and Associates – 2006-Present
- Expert witness and consultant, legal fees and litigation management
- Member, National Association of Legal Fee Analysis

## Overview of Services

John D. O'Connor offers expert consultant services in a variety of attorney fee and litigation management contexts. He is regularly employed as both an expert and litigator in attorney fee disputes, confidential consultation. His services often involve an analysis of the skill and efficiency of attorneys in litigation and litigation management.

## Background and Qualifications

John O'Connor has over 40 years of experience in a wide variety of litigation matters, ranging from personal injury to civil rights and employment to complex business cases. A significant part of that experience is the trial of over 70 cases in both state and federal Courts throughout the country, and the preparation for and settlement of many more. Additionally, for 20 years, O'Connor functioned as managing partner of a substantial litigation firm. His law firm experience includes partnerships in small boutique firms, a substantial mid-sized firm, and larger nationally known firms.

A significant portion of his work for over 35 years has been the evaluation, litigation and resolution of attorney fee issues. First as an Assistant United States Attorney, and later representing county and municipal governments, O'Connor has represented potential fee payors under "fee shifting" statutes.

As a private lawyer for federal government agencies during the financial institutions crises of the 1980's and 90's, and as well working with a variety of insurers and self-insurers, O'Connor has worked to develop with the client, and implement on behalf of his law firm, sophisticated billing guidelines. O'Connor has worked with many clients in mutually cooperative fashion to examine firm billings, assure compliance and rectify short comings.

Since the advent in the late 1980's of adversarial legal auditing, O'Connor has served extensively as both an expert and litigator analyzing audit criticisms, applying community standards, and construing applicable case law. In this context, O'Connor has consulted on hundreds of adversarial legal fee disputes over three decades. He has as well served as JAMS mediator, a litigator representing both law firms and fee payors on fee issues, and an expert witness both through written Declaration and oral testimony.

# Exhibit B

FILED
LOS ANGELES SUPERIOR COURT

REC'D

DEC 1 5 2008

FILING WINDOW

JAN 1 3 2009

JOHN A. CLARKE, CLERK

BY R. ALVA, DEPUTY

RECEIVED
JAN 1 2 2009

DEPT. 38

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

| | |
|---|---|
| BRIAN GODFREY, MARK GODFREY, ELIZABETH GODFREY, and SUSAN GODFREY, | Case No: BC373078 |
| Plaintiffs, | [Assigned to the Honorable Maureen Duffy-Lewis, Dept. 68] |
| vs. | ██████████ ORDER GRANTING PLAINTIFFS' MOTION FOR ATTORNEYS FEES AND COSTS |
| HYUNDAI MOTOR FINANCE COMPANY, SKIP TRACY LLC, BELLES CAMP COMMUNICATIONS LLC, PAUL KULAS, KAREN BROSIUS, and DOES 1-50, inclusive, | BY FAX |
| Defendants. | |

1   Plaintiffs' motion for an award of attorneys' fees and costs came on regularly for

2   hearing on December 5, 2008 at 9:30 a.m.  The Court, having considered all the papers and

3   oral argument, grants the motion for attorneys fees and costs as to defendant Patrick K. Willis

4   Company, Inc., in the amount of $210,654.28, representing attorneys fees of $205,411.50 plus

5   costs and expenses of $5,242.78.

6   The Court finds that plaintiffs' counsel's base lodestar is $136,941, and that all of the

7   hours requested by plaintiffs' counsel were reasonably incurred.  The requested hourly rates

8   of $495 for Alexander Trueblood, and $375 for Brandon Block, are reasonable, and represent

9   prevailing rates for private attorneys in the community conducting non-contingent litigation of

10  the same type.

11  The Court grants a 1.5 multiplier on the base lodestar, as permitted by Ketchum v.

12  Moses, 24 Cal.4th 1122 (2001) and other applicable authorities.  Therefore, the base lodestar

13  is enhanced to $205,411.50.  The Court also awards plaintiffs their costs and expenses, in the

14  requested amount of $5,242.78.  Thus, the total amount of attorneys fees and costs awarded to

15  plaintiffs and against defendant Patrick K. Willis Company, Inc. is $210,654.28.

16  **IT IS SO ORDERED.**

17

18  DATED:  *1-13-09*

19                                          By

                                            JUDGE OF THE SUPERIOR COURT
20                                          COUNTY OF LOS ANGELES

21

22

23

24

25

26

27

28

# Exhibit C

Harvey A. Schneider, Ret.
Alternative Resolution Centers, LLC
1875 Century Park East
Suite 450
Los Angeles, California 90067
Tel: 310-284-8224
Fax:  310-284-8229

**ALTERNATIVE RESOLUTION CENTERS, LLC**

EDNALYN A. TAN,

         Claimant(s),

vs.

WHEELS FINANCIAL GROUP, INC., et al.,

         Respondent(s).

**CASE NO.: 78M4930**

**FINDINGS OF FACT AND
CONCLUSIONS OF LAW**

**INTRODUCTION**

Claimant's Motion for Attorney's Fees and Costs follows the settlement of the underlying action and certain ruling made by the court and the arbitrator.[1] It is undisputed that Claimant is the prevailing party in this action and is entitled to fees and

---

[1] The settlement provided for Respondents to pay $35,000.00 to Claimant in damages, to forever waive any alleged balance on her account and to permanently delete any derogatory credit reports of her account.

costs pursuant to statute. The issue here presented is the attorney's fees and costs to which Claimant is entitled. Claimant's claim is for $349,140.00 in attorneys fees (lodestar of $174,570.00 plus a 2.0 multiplier) and $10,802.50 in costs.

## FINDINGS OF FACT

1.  Claimant's counsel sent a pre-litigation settlement demand to Respondents to which Respondents failed to respond.

2.  After Claimant began her action by filing a class action complaint, Respondents moved to compel arbitration based on a class action waiver that was contained in the loan documents signed by Claimant.

3.  Given the uncertain state of the law concerning the legality of arbitration waiver provisions, Claimant's counsel reasonably filed an opposition to the motion to compel arbitration and reasonably spent time briefing the <u>Vargas</u> issue and filing opposition to Respondents' motion requesting the court to reconsider its ruling denying arbitration. The fact this case ended up being a single Claimant arbitration does not make Claimant's counsels actions in opposing the motion to compel arbitration or the motion for reconsideration any less reasonable or compensable.

4.  It was Respondents, not Claimant, who opposed an order staying the action while it was pending in the Superior Court.

5.  Respondents made no settlement offer until December 7, 2015. The $35,000.00 Respondents agreed to pay to Claimant by away of settlement is five times the amount Claimant agreed to accept in February 2015.

6. Claimant claims a lodestar of $174,570.00 and a multiplier of 2.0. Respondents claim Claimant's counsel are seeking to recover fees based on vague and inadequate tasks descriptions but do not identify with sufficient specificity the time spent about which they complain. However, some of the time expended by Claimant's counsel on various matters were excessive (e.g., more than 50 hours incurred in defending Respondents' motion to compel arbitration; 35 hours incurred in defending Respondents' motion for reconsideration; and 89.4 hours for the attorney's fees motion.[2]

7. A lodestar multiplier of 1.5 is warranted in this case based on the facts Claimant's counsel: (i) took this case on a contingency basis; (ii) assumed the risk of loss on the case; (iii) funded all costs; (iv) could not work on other cases while working on this case; and (v) achieved a good result for Claimant. Moreover, Claimant's counsel's expertise on the subject matter of this lawsuit contributed to Claimant's success.

8. $675.00 is a reasonable hourly rate for Mr. Trueblood and $475.00 is a reasonably hourly rate for Mr. Block.

---

[2] Counsel seek payment for only 32.1 hours on this motion, which the arbitrator still finds to be excessive. Moreover, counsel took on tasks that would ordinarily be performed by a first year associate and, in addition, reviewed and revised each others work product, as well as jointly appearing for hearings and conferences with the court and arbitrator. In doing so, Claimant's counsel engaged in duplicative work. It is, therefore, appropriate to reduce the lodestar by 20%.

3
FINDGINDS OF FACT AND CONCLUSIONS OF LAW

9.  Although the Hart letter and complaint created some impetus on the part of Respondents to change their NOI, it was the letter of Claimant's counsel and Claimant's lawsuit that actually resulted in the change to the NOI. Thus, the action of Claimant's counsel benefited the public at large.

## CONCLUSIONS OF LAW

Mr. Trueblood is entitled to recover attorney's fees in the amount of $97,200.00 calculated as follows:

1.  120 hours x $675/per hour equals $81,000.00 lodestar less 20% reduction to lodestar equals $64,800.00 plus 1.50 enhancement to lodestar equals total fees of $97,200.00.

2.  Mr. Block is entitled to recover fees in the amount of $95,076.00 calculated as follows:

    166.80 hours at $475/hour equals $79,230.00 lodestar less 20% reduction to lodestar equals $66,384.00 plus 1.50 enhancement to lodestar equals total fees of $95,076.00.

3.  Claimant's counsel are entitled to recover costs in the amount of $10,802.50. The costs incurred represent expenses that would be charged to paying clients even though they are not normally taxable as costs.

Dated: January 6, 2017

By _____
Harvey A. Schneider, Judge (Ret.)
Arbitrator

4
FINDGINDS OF FACT AND CONCLUSIONS OF LAW

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

     I am employed in the County of Los Angeles, State of California. I am over the age of eighteen and not a party to the within action. My business address is 1875 Century Park East, Suite 450, Los Angeles, California 90067.

     On April 14, 2016, I served the foregoing document(s) described as **RULING ON RESPONDENTS' MOTION TO DISMISS** on the following interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

\_\_\_\_\_ **BY MAIL**
     I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid. I am "readily familiar" with the company's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. Postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date of postage meter date is more than one day after date of deposit of mailing in affidavit.

\_\_\_\_\_ **BY FACSIMILE TRANSMISSION**
     I transmitted a copy of the foregoing document(s) this date via telecopier to the following facsimile number(s) listed above.

\_\_X\_\_ **BY ELECTRONIC EMAIL**
     I transmitted a copy of the foregoing document(s) this date via electronic email to the following email addresses listed above.

\_\_\_\_\_ **BY PERSONAL SERVICE**
     I caused such envelope(s) to be delivered by hand to the office(s) of the addressee(s) noted above.

     I declare under penalty of perjury under the laws of the State of California the above is true and correct.

     Executed on April 14, 2016, Los Angeles, California 90067.

Marjorie Luna

Alexander Trueblood, Esq.
Trueblood Law Firm
10940 Wilshire Blvd.
Suite 1600
Los Angeles, California 90024
alec@hush.com

Raymond Y. Kim, Esq.
Reed Smith LLP
355 S. Grand Avenue
Suite 2900
Los Angeles, California 90071
rkim@reedsmith.com

Brandon A. Block, Esq.
Law offices of Brandon A. Block
433 N. Camden Drive
Suite 600
Beverly Hills, California 90210
Brandon@bblocklaw.com

# Exhibit D

FILE COPY
8/20/2018

1  Carolee A. Hoover (SBN 282018)
   choover@mcguirewoods.com
2  Chris M. McDonald (SBN 294836)
   cmcdonald@mcguirewoods.com
3  **MCGUIREWOODS LLP**
4  Two Embarcadero Center, Suite 1300
   San Francisco, CA 94111
5  Telephone:  415.844.9944
   Facsimile:  415.844.9922
6
7  Attorneys for Cross-Defendant
   VW Credit, Inc.

8

9                **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10                    **FOR THE COUNTY OF LOS ANGELES**

11 | VW CREDIT, INC.,                          | CASE NO. SC128784

12 |              Plaintiff,                   | **DECLARATION OF CHRIS M.**
                                              | **MCDONALD IN SUPPORT OF CROSS-**
13 |      vs.                                  | **DEFENDANT VW CREDIT, INC.'S**
                                              | **OPPOSITION TO DEFENDANT/CROSS-**
14 | JILLIAN SPEER, and DOES 1-10,            | **COMPLAINANT JILLIAN SPEER'S**
                                              | **MOTION TO COMPEL**
15 |              Defendants.                  |
16 |                                           | **Reservation ID:   180808338599**

17 | JILLIAN SPEER,                            |
18 |              Cross-Complainant,           | Date: August 31, 2018
                                              | Time: 8:30 a.m.
19 |      vs.                                  | Dept.: M
                                              | Judge: Hon. Mitchell L. Beckloff
20 | VW CREDIT, INC., and ROES 1-20,          |
21 |              Cross-Defendants.            | Complaint Filed: February 1, 2018
                                              | Cross-Complaint Filed: March 28, 2018
22

23

24

25

26

27

28

                                      1
DECLARATION OF CHRIS M. MCDONALD IN SUPPORT OF CROSS-DEFENDANT VW CREDIT, INC.'S
OPPOSITION TO DEFENDANT/CROSS-COMPLAINANT JILLIAN SPEER'S MOTION TO COMPEL

1    I, Chris M. McDonald, declare as follows:

2         1.     I am a licensed California attorney. I am an attorney at the law firm of

3    McGuireWoods LLP, counsel of record for Cross-Defendant VW Credit, Inc. ("VCI") in this

4    action. I have personal knowledge of the matters set forth in this declaration and if called upon to

5    do so, could testify competently to them.

6         2.     I submit this declaration in support of VCI's Opposition to the Motion to Compel

7    of Defendant/Cross-Complainant Jillian Speer ("Speer").

8         3.     On March 28, 2018, Speer filed a Cross-Complaint against VCI.

9         4.     On April 11, 2018, Speer propounded written discovery to VCI in its capacity as a

10   Cross-Defendant, including Interrogatories, Requests for Production of Documents, and Requests

11   for Admission. A true and correct copy of the Requests for Production is attached hereto as

12   Exhibit A.

13        5.     On May 17, 2018, immediately after McGuireWoods LLP was retained as counsel

14   for VCI to defend the Cross-Complaint, I emailed Speer's counsel to request an extension until

15   June 7, 2018 to provide VCI's discovery responses. A true and correct copy of my May 17, 2018

16   email is attached hereto as Exhibit B.

17        6.     Speer's counsel did not respond to VCI's request for an extension on discovery.

18        7.     VCI elected to arbitrate the Cross-Complaint and on June 1, 2018, filed a Motion to

19   Compel Arbitration of the Cross-Complaint. My assistant scheduled the hearing on the Court's

20   online reservation system for December 26, 2018, which was the earliest date available at the time

21   for motions to compel arbitration. VCI's understanding was, and always has been, that discovery

22   is stayed until the Court rules on its Motion.

23        8.     After VCI filed its Motion to Compel Arbitration, Speer's counsel did not take any

24   action to litigate this matter for two months.

25        9.     On August 1, 2018, Speer's counsel emailed my colleague, Carolee Hoover, to

26   confirm his agreement to arbitration. A true and correct copy of counsel's August 1, 2018 email is

27   attached hereto as Exhibit C.

28        10.    On August 2, 2018, Speer's counsel emailed Ms. Hoover a proposed joint case

2

1    management conference statement which reiterated Speer's agreement to arbitration.  Speer's

2    counsel also acknowledged in the case management statement that discovery was "on hold until

3    arbitration determined."  A true and correct copy of counsel's August 2, 2018 email and proposed

4    case management statement is attached hereto as Exhibit D.

5        11.    On August 2, 2018, Speer filed a case management statement which reiterated her

6    agreement to arbitration.  Speer also represented in the case management statement that discovery

7    was "on hold until arbitration determined."  A true and correct copy of Speer's case management

8    statement is attached hereto as Exhibit E.

9        12.    Speer's counsel did not meet and confer with VCI's counsel prior to filing Speer's

10    Motion to Compel.  Speer's counsel neither emailed nor contacted VCI's counsel via telephone or

11    otherwise to meet and confer prior to filing her Motion.  Speer's counsel also failed to attest in his

12    declaration that he met and conferred before filing Speer's Motion.

13        13.    On August 9, 2018, after receiving Speer's Motion to Compel, Ms. Hoover emailed

14    Speer's counsel to request that the Motion be withdrawn based on their failure to meet and confer

15    and prior acknowledgments that discovery was stayed.  A true and correct copy of the August 9,

16    2018 email is attached hereto as Exhibit F.

17        14.    In an abundance of caution, and without waiving its right to compel arbitration and

18    stay discovery, VCI has agreed to provide discovery responses before the August 31, 2018 hearing

19    on Speer's Motion.

20        15.    On August 16, 2018, I spoke to Speer's counsel on the phone.  I advised them that

21    VCI has agreed to provide discovery responses and requested that Speer withdraw her Motion.

22    Speer's counsel declined my request.

23        16.    On August 16, 2018, I emailed Speer's counsel to summarize our phone call and

24    notify them that we would be requesting our attorneys' fees and costs in opposing Speer's Motion.

25    A true and correct copy of my August 16, 2018 email is attached hereto as Exhibit G.

26        17.    Speer's counsel refused to withdraw the Motion despite VCI's requests.

27        18.    VCI has incurred and will continue to incur reasonable attorneys' fees and costs in

28    defending Speer's Motion, of which the estimated amount is $7,079.50.  These fees, which include

3

1  anticipated time to prepare for and attend the hearing on the instant Motion, are: (1) approximately

2  10 hours of my time to prepare this Opposition and accompanying declaration at an hourly rate of

3  $275; (2) 0.6 hours of my time for telephone calls and emails with Speer's counsel regarding the

4  Motion at an hourly rate of $275; (3) 0.8 hours of partner Carolee A. Hoover's time preparing this

5  Opposition and emailing Speer's counsel at an hourly rate of $690; (4) approximately 0.5 hours of

6  associate Alexander J. Gershen's time preparing this Opposition at an hourly rate of $475; (5) an

7  anticipated 5 hours of associate Alexander J. Gershen's time to prepare for and attend the hearing

8  on Speer's Motion at an hourly rate of $475; and (6) $1,000 in anticipated costs.  These hourly

9  rates are reasonable based on the current market rates and nature and experience of the attorneys.

10

11       I declare under penalty of perjury under the laws of the State of California that the

12  foregoing is true and correct.  Executed this 20th day of August, 2018, at San Francisco, CA.

13

14

15

16                                        Chris M. McDonald

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF CHRIS M. MCDONALD IN SUPPORT OF CROSS-DEFENDANT VW CREDIT, INC.'S
OPPOSITION TO DEFENDANT/CROSS-COMPLAINANT JILLIAN SPEER'S MOTION TO COMPEL

# Exhibit E

**Alexander B. Trueblood**, Cal. Bar No. 150897
Email: Abtlaw@Earthlink.net
TRUEBLOOD LAW FIRM
10940 Wilshire Boulevard, Suite 1600
Los Angeles, California 90024
Telephone (310) 443-4139; Fax (310) 234-4023

**Robert Stempler**, Cal. Bar No. 160299
Email: StemplerLaw@Gmail.com
CONSUMER AND TAX LAW OFFICE OF
ROBERT STEMPLER, APLC
3400 Inland Empire Boulevard, Suite 101
Ontario, California 91764-5577
Telephone (909) 972-6841; Fax (909) 433-2132

Co-Counsel for Plaintiff KIRK MILLER

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| KIRK MILLER, | Case Number CV 07-4869-ODW (AGRx) |
|---|---|
| Plaintiff, | JUDGMENT AND ORDER GRANTING MOTION BY PLAINTIFF FOR AWARD OF ATTORNEY'S FEES, FOLLOWING ACCEPTANCE OF RULE 68 OFFER BY ESKANOS & ADLER, A PROFESSIONAL CORPORATION |
| vs. | |
| MIDLAND FUNDING LLC; et al.; | |
| Defendants. | Judicial Ofcr: Hon. Otis D. Wright II |

Before the Court is Plaintiff's motion for an award of attorney's fees, pursuant to Rule 68 of the Federal Rules of Civil Procedure, against defendant ESKANOS & ADLER, A PROFESSIONAL CORPORATION.

After considering the moving, opposing, and reply papers, the Court GRANTS Plaintiff's motion for an award of attorney's fees against defendant ESKANOS & ADLER, A PROFESSIONAL CORPORATION (Defendant), pursuant to its Rule 68 offer.

The Court finds that Plaintiff has incurred $20,351.41 in attorneys fees, as follows: (1) for Robert Stempler, 8.2 hours at $350 per hour (a total of $2,870.00) (Stempler Decl. ¶¶ 28-30, Ex. 1); (2) for Alexander B. Trueblood, 34.90 hours at $495 per hour (a total of $17,275.50) (Trueblood Decl. ¶ 8, Ex. 1); and (3) litigation-related expenses, other than court costs submitted on Plaintiff's Bill of Costs, of $113 paid by Mr. Stempler's office (Stempler Decl. ¶ 31, Ex. 2) and $92.91 paid by Mr. Trueblood's office (Trueblood Decl. ¶ 9, Ex. 2).

Based on the experience of Plaintiff's counsel, as detailed in the declarations in support of Mr. Stempler and Mr. Trueblood, and the prevailing market rate for attorneys having a specific practice of law, within Southern California, as indicated by the declarations in support of Martin W. Anderson, Mr. Stempler, and Mr. Trueblood, the Court finds that $350 is a reasonable hourly rate for Mr. Stempler and that $495 is a reasonable hourly rate for Mr. Trueblood. The Court notes that other judges, including other District Court Judges within the Central District of California, have also approved these hourly rates.

The Court also finds that the time allocated by Mr. Stempler and Mr. Trueblood was reasonable for Plaintiff's ligation with this Defendant.

IT IS SO ORDERED.

Dated: April 29, 2008

_____
OTIS D. WRIGHT II
United States District Judge

- 2 -

# Exhibit F

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 10-1695 AG (RNBx) | Date | October 3, 2011 |
|---|---|---|---|
| Title | RAMIRO HERNANDEZ v. ERIN CAPITAL MANAGEMENT, LLC, et al. | | |

| Present: The Honorable | ANDREW J. GUILFORD | |
|---|---|---|
| Lisa Bredahl | Not Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|

**Proceedings:** **[IN CHAMBERS] ORDER GRANTING PLAINTIFF'S MOTION FOR ATTORNEY FEES**

Plaintiff and Defendants have agreed to settle this Fair Debt Practices Act Case ("FDCPA") case for $6,500 dollars plus reasonable attorney fees and costs. But the parties have been unable to reach an agreement on what constitutes reasonable attorney fees and costs. Plaintiff now files a Motion for Attorney Fees ("Motion") with this Court, asking it to uphold its lodestar calculation, along with supplemental fees for litigating this Motion. Defendants argue that Plaintiff's counsel's hourly rate is reasonable, but the number of hours Plaintiff's counsel spent on this relatively small matter is not.

After considering all of the papers filed, this Court now GRANTS Plaintiff's Motion in the amount of $23,822.93, and additional fees associated with this Motion in the amount of $4,500. The total amount awarded is $28,322.93.

**BACKGROUND**

Plaintiff sued Defendants for fraudulent debt collection under the FDCPA. Plaintiff's allegations are as follows. Defendants sued Plaintiff in New York on a debt not owed.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | SACV 10-1695 AG (RNBx) | Date | October 3, 2011 |
|---|---|---|---|
| Title | RAMIRO HERNANDEZ v. ERIN CAPITAL MANAGEMENT, LLC, et al. | | |

Plaintiff was a California resident who never lived in New York. Defendants unlawfully obtained a default judgment against Plaintiff in New York, told Plaintiff that the judgment had been domesticated in California, and then threatened to contact his employer and garnish his wages if Plaintiff did not pay the fraudulent debt.

Based on those facts, Plaintiff brought this FDCPA suit against Defendants. Plaintiff alleges that Defendants have a practice of threatening consumers with similar out of state default judgments.

After some litigation, including limited discovery, parties settled the pending case for $6,500 plus reasonable attorney fees and costs. This amount is composed of $2,000 in maximum combined statutory damages and $4,500 in actual damages. Counsel was unable to agree on reasonable attorney fees and costs. Plaintiff now brings this Motion asking the Court to award its fees and costs.

## <u>LEGAL STANDARD</u>

The FDCPA allows successful parties to recover "the costs of the action, together with a reasonable attorney's fee as determined by the court . . ." 15 U.S.C. § 1692(k)(a)(3). "Given the structure of [§ 1692(k)(a)(3),] attorney fees should not be construed as a special or discretionary remedy; rather the Act mandates an award of attorney fees as a means of fulfilling Congress's intent that the Act should be enforced by debtors acting as private attorneys general." *Savage v. NIC, Inc*., No. 2:08-cv-01780-PHX-JAT, 2010 WL 2347028, at *2 (D. Ariz. 2010) (quoting *Graziano v. Harrison*, 950 F. 2d 107, 113 (3d Cir. 1991); *see also Camacho v. Bridgeport Fin., Inc*., 523 F.3d 973, 978 (9th Cir. 2008) (finding that the reason for this fee-shifting provision is "to encourage private enforcement of the law.")

The Court engages in a two-step analysis to calculate attorney fee awards under the FDCPA. First, the Court calculates the "lodestar figure" by "taking the number of hours

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 10-1695 AG (RNBx) | Date | October 3, 2011 |
|---|---|---|---|
| Title | RAMIRO HERNANDEZ v. ERIN CAPITAL MANAGEMENT, LLC, et al. | | |

reasonably expended on the litigation and multiplying by a reasonable hourly rate." *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). Once calculated, there is a "strong presumption" that the lodestar figure is reasonable, and therefore, "should only be enhanced or reduced in rare and exceptional cases." *Fisher*, 214 F.3d at 1119 n.4 (citing *Pennsylvania v. Delaware Valley Citizens' Counsel for Clean Air*, 478 U.S. 546, 565 (1986)) (internal quotations omitted).

Second, the Court decides whether "to enhance or reduce the lodestar figure based on an evaluation of the *Kerr* factors that are not already subsumed in the initial lodestar calculation." *Fischer*, 214 F.3d at 1119. Six of the *Kerr* factors are relevant for the Court to consider in addition to the lodestar calculation: (1) time limitations imposed by the client or the circumstances, (2) the amount involved and the results obtained, (3) the experience, reputation, and ability of the attorneys, (4) the 'undesirability' of the case, (5) the nature and length of the professional relationship with the client, and (6) awards in similar cases. *See Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *cert. denied*, 425 U.S. 951 (1976) (listing the twelve factors); *see also Morales v. City of San Rafael*, 96 F.3d 359, 364 n.9 (9th Cir. 1996) (finding that five of the factors have been subsumed in the lodestar calculation); *Davis v. City & County of San Francisco*, 976 F.2d 1536, 1549 (9th Cir. 1992), *vacated in part on other grounds*, 984 F.2d 345 (9th Cir. 1993) (stating that a sixth factor is irrelevant in evaluating attorney fees).

Out of these factors, the Supreme Court has found that "the most critical factor is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). "Success must be measured not only in the amount of the recovery but also in terms of the principle established and the harm checked." *Zagorski v. Midwest Billing Serv., Inc.* 128 F.3d 1164, 1166 (7th Cir. 1997); *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996) ("[S]uccess may be measured by 'the significance of the legal issues on which the plaintiff claims to have prevailed' and the 'public purpose' the plaintiff's litigation served.") (quoting *Farrar v. Hobby*, 506 U.S. 103, 117 (1992).

## ANALYSIS

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 10-1695 AG (RNBx) | Date | October 3, 2011 |
|---|---|---|---|
| Title | RAMIRO HERNANDEZ v. ERIN CAPITAL MANAGEMENT, LLC, et al. | | |

Plaintiff is entitled to fees under the FDCPA because he was successful in this action, recovering both $2,000 in maximum combined statutory damages and $4,500 in actual damages. Also, Plaintiff and Defendants agreed that their settlement would include Plaintiff's reasonable attorney fees and costs. The Court will now determine what constitutes reasonable fees and costs in this case.

## 1. LODESTAR ANALYSIS

Plaintiff's counsel calculate that their total bill is $23,822.93, not including supplemental fees associated with this Motion ("Motion Fees"). Counsel reaches this calculation by multiplying the hourly rate for its attorneys ($225 - $350) and paralegals ($80), by the number of hours spent working on this case (73.50). This figure does not include time spent on this Motion. The Court will examine each factor to determine its reasonableness.

### 1.1 Reasonable Hourly Rate

Defendants do not contest the reasonableness of the hourly rate. The Court also finds that Plaintiff's counsel's hourly rate was reasonable.

### 1.2 Reasonable Number of Hours Expended

Defendants argue that the number of hours Plaintiff's counsel expended on this matter is not reasonable.

Plaintiff's counsel assert that this case required them to perform the following tasks: fact gathering, including extensive phone and email conversation with their client; research regarding other litigation against Defendants alleging unlawful out of state post-judgment collection; preparation of the complaint, which included individualized, non-boilerplate allegations; preparation of discovery; meetings with opposing counsel regarding settlement and discovery; and numerous phone calls between co-counsel in New York

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 10-1695 AG (RNBx) | Date | October 3, 2011 |
|---|---|---|---|
| Title | RAMIRO HERNANDEZ v. ERIN CAPITAL MANAGEMENT, LLC, et al. | | |

and California regarding the facts of this case.

Counsel for Defendants argues that Plaintiff spent too much time drafting the complaint (7.9 hours); communicating between counsel (14 hours); responding to discovery (8.9 hours); propounding discovery (9.8 hours); and preparing settlement documents (4 hours).

Plaintiff's counsel claim that they spent a reasonable amount of time on those tasks given the facts of this case. First, this was not a simple, run of the mill FDCPA case, but involved multiple jurisdictions and a past pattern and practice of similar false debts. This meant that Plaintiff's counsel had to do jurisdictional research, consult attorneys in both New York and California, and look into other cases involving the Defendant.

Second, Defendants did not immediately admit liability. Although Defendants contest this point, Plaintiff convincingly offers evidence of past communications where Plaintiff warned Defendants that their reluctance to settle would increase the fees. (Reply, 12:20-24, Ex. G., p. 2.) Defendants "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by plaintiff in response." *Copeland v. Marshall*, 641 F.2d 880, 904 (D.C. Cir. 1980) (*en banc*) (citing *Wolf v. Frank*, 555 F.2d 1213, 1217 (5th Cir. 1977) ("Obviously, the more stubborn the opposition the more time would be required" by opposing counsel).

As for Defendants' other concerns, Plaintiff painstakingly addresses each one and convinces this Court that overall the number of hours Plaintiff billed is a reasonable lodestar figure.

1.3     Costs

There is insufficient evidence to support an award of costs.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 10-1695 AG (RNBx) | Date | October 3, 2011 |
|---|---|---|---|
| Title | RAMIRO HERNANDEZ v. ERIN CAPITAL MANAGEMENT, LLC, et al. | | |

1.4    Conclusion

This Court concludes that Plaintiff's lodestar figure of $23,822.93 is reasonable.  The Court declines to separately award costs.

## 2.    RELEVANT *KERR* FACTORS

The Court will now decide whether any of the other *Kerr* factors justifies adjusting the lodestar figure down.  For this case, the relevant *Kerr* factors are the awards in similar cases and the success obtained, considering the purpose of the FDCPA statue and its importance to the public.  The Court has considered the other *Kerr* factors, but finds that they do not impact the Court's decision.

2.1    Awards in Other Cases

Both parties present various cases in support of their assertion that the court should shift the fees up or down.  *Compare Savino v. Computer Credit, Inc.*, 71 F. Supp. 2d  173 (E.D.N.Y. 1999) (reducing 187 hours to 20 hours on a simple $500 FDCPA case involving a single legal issue, resulting in a $3,675 award of fees, plus $675 for the fee motion), *with Savage v. NIC, Inc.*, No. 2:08-cv-01780-PHX-JAT, 2010 WL 2347028, at *2-6 (D. Ariz. 2010) (awarding the full $17,442.30 in fees on a $2,000 FDCPA settlement).  The *Savino* court–ironically, the case relied upon by Defendants–decided that the fees should be 870% of the total award, while the *Savage* court found that the fees could be 872% of the award.  This case is less than either award, as Plaintiff is only seeking fees that are roughly 366% of the settlement amount.  It thus appears that even Defendants' case, *Savino*, supports a full award of damages.

The Court also notes that unlike *Savino*, this is not a simple, single issue FDCPA case.  To adequately litigate this case, counsel for Plaintiff had to investigate Defendants' other cases and do interstate research into the effect of default judgements across borders.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 10-1695 AG (RNBx) | Date | October 3, 2011 |
|---|---|---|---|
| Title | RAMIRO HERNANDEZ v. ERIN CAPITAL MANAGEMENT, LLC, et al. | | |

Thus, this case would justify a larger award even if it were outside the general range awarded by other courts.

### 2.2 Success Obtained

Plaintiff obtained not only statutory damages, but also double that amount in actual damages. But the best measure of success in an FDCPA case is the greater service to the public. *Morales*, 96 F.3d at 363 ("[S]uccess may be measured by 'the significance of the legal issues on which the plaintiff claims to have prevailed' and the 'public purpose' the plaintiff's litigation served.") (quoting *Farrar*, 506 U.S. at 117). Congress specifically included a fee-shifting provision in the FDCPA to encourage attorneys to bring these cases. *See Savage*, 2010 WL 2347028, at *3. Congress wanted attorneys to litigate FDCPA cases because, although the individual damages might be small, "FDCPA plaintiffs 'seek[ ] to vindicate important rights that cannot be valued solely in monetary terms.'" *Id.* (citing *City of Riverside*, 477 U.S. at 562).

In this case, the Court finds that the full award of the lodestar figure is appropriate given the importance of the FDCPA, and the public impact of this particular case. This case involved Defendants who allegedly had a practice, spanning at least two states, of using this country's court systems to defraud consumers. By succeeding on the merits, Plaintiffs benefitted other members of the public who might have otherwise fallen victim to this scheme if left unchecked. The public has a strong interest in ensuring that attorneys invest the necessary time to stop such practices. The success in this case, both in terms of damages and public impact, supports a full award of the lodestar figure.

### 2.3 Conclusion

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 10-1695 AG (RNBx) | Date | October 3, 2011 |
|---|---|---|---|
| Title | RAMIRO HERNANDEZ v. ERIN CAPITAL MANAGEMENT, LLC, et al. | | |

The *Kerr* factors support a full award of the lodestar figure.


## 3. MOTION FEES

Plaintiff also asks the Court for additional attorney fees for bringing this Motion. The Court notes that Plaintiff originally offered to give Defendants a 20% reduction of fees to avoid bringing this Motion. (Reply 18:12-25.) Defendants refused.

Defendants should have accepted this quite reasonable offer. "At this point, the Court is reminded of Justice Brennan's observation in *Hensley*, that repetitive post-decision litigation solely over the amount of attorney fees awarded is 'one of the least socially productive types of litigation imaginable.'" *Savino*, 71 F. Supp. 2d at 178 (quoting *Hensley,* 461 U.S. at 442) (concurring in part)). The Court now rejects Defendant's request that the Court implement the 20% reduction, and awards Plaintiff's Motion Fees. Taking into account counsel's billing rate and the amount of work involved, the Court finds that $4,500 is a reasonable amount of attorney fees for bringing this Motion.


## DISPOSITION

The Court GRANTS Plaintiff's Motion, and awards $23,822.93 in attorney fees to date, and additional Motion fees in the amount of $4,500. The total amount awarded is $28,322.93.

:    0

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 10-1695 AG (RNBx) | Date | October 3, 2011 |
|---|---|---|---|
| Title | RAMIRO HERNANDEZ v. ERIN CAPITAL MANAGEMENT, LLC, et al. | | |

Initials of
Preparer

lmb