ALEXANDER B. TRUEBLOOD (Cal. Bar No. 150897)
10940 Wilshire Boulevard, Suite 1600
Los Angeles, California 90024
Telephone:  (310) 443-4139
Facsimile:  (310) 943-2255

ROBERT STEMPLER (Cal. Bar No. 160299)
8200 Wilshire Blvd, Suite 200
Beverly Hills, CA 90211-2331
Telephone (323) 486-0102
Fax: (323) 488-6895

BRANDON A. BLOCK (Cal. Bar No. 215888)
433 North Camden Drive, Suite 600
Beverly Hills, CA 90210
Telephone (310) 887-1440
Facsimile: (310) 496-1420

Attorneys for Plaintiff
JAGDEEP BIDWAL

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAGDEEP S. BIDWAL,<br><br>Plaintiff,<br><br>vs.<br><br>UNIFUND CCR PARTNERS, UNIFUND PORTFOLIO A, LLC, QUALL CARDOT LLP, MATTHEW W. QUALL, LANG, RICHERT & PATCH, A PROFESSIONAL CORPORATION, ELECTRONIC DOCUMENT PROCESSING, INC., and JULIO ASCORRA,<br><br>Defendants. | Case No: 3:17-CV-2699-LB<br><br>**DECLARATION OF ALEXANDER B. TRUEBLOOD IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS FEES AND COSTS**<br><br>Date: March 7, 2019<br>Time: 9:30 a.m. |

I, Alexander B. Trueblood, declare as follows:

1. I am an attorney at law duly licensed to practice in all courts of the state of California. I have personal knowledge of the facts stated herein, and if called as a witness, would competently testify thereto. I am the attorney of record for the plaintiff Jagdeep Bidwal, along with the Robert Stempler and Brandon A. Block.

## EDUCATION AND BACKGROUND

2. I am the principal of the Trueblood Law Firm, and am a specialist in consumer law and class actions. I graduated with honors from the University of California, Berkeley with a B.A. in English in 1984. I obtained my J.D. from UCLA Law School in 1990, and graduated with membership in the Order of the Coif. I was awarded two American Jurisprudence awards, for being first in my class, in the subjects of Legal Research and Writing, and Contracts. I was also Chief Comments Editor of the UCLA Environmental Law Journal.

3. I was admitted to the California Bar in 1990. I worked at the law firm of Morrison & Foerster LLP for the period 1990 through 1993 as an associate in the litigation department of the Los Angeles office. I worked on complex disputes between major corporations in the areas of patent law, antitrust, and insurance coverage. Subsequently, I joined the firm of Love & Bosserman, specialists in plaintiff's employment and discrimination cases, as an associate in 1993. Gordon Bosserman is the former managing partner of the Los Angeles office of Baker & Mackenzie. At Love & Bosserman, I handled a heavy caseload of contested wrongful termination, racial and gender discrimination, fraud, and unfair business practices cases.

4. In 1996, I began working for Chavez & Gertler, LLP in San Francisco, California, a nationally known plaintiff's consumer class action firm. Mark Chavez, one of the named partners, is on the Board of Directors of the National Association of Consumer Advocates, and the firm is recognized as a leader in consumer class actions and consumer law. Jonathan Gertler, the other partner, pioneered the first

products liability claims against major needle manufacturers, on behalf of health worker victims of AIDS needlestick injuries. At Chavez & Gertler, I specialized in class action consumer litigation, on behalf of consumers, working on scores of class actions and private attorney general actions brought under California's UDAP provision, the Unfair Competition Law. I handled several class action cases involving auto lease overcharges and abuses in force-placed insurance programs. In 1999, I was offered partnership at Chavez & Gertler, but ultimately decided to depart and form my own firm, the Trueblood Law Firm.

5. Starting in 2016, I expanded my law practice to encompass Washington and Texas, and I became licensed in those jurisdictions at that time. The Trueblood Law Firm now has offices in Washington, California, and Texas, and brings class and individual cases principally in the areas of consumer finance and auto repossessions.

6. Over the last 20 years, I have been a leader in the plaintiffs' class action consumer bar in California. I have been involved on the plaintiffs' side in much of the class action litigation in California since 1998 involving post-repossession notice violations of the UCC and California's Rees-Levering Automobile Sales Finance Act. Since 1998, I have been counsel in class action and private attorney general cases brought against virtually every lender in the country who operates in California, for defective post-repossession notices. In 1998, I was one of the first lawyers in the state to identify and prosecute these class action cases. Over the course of the next two years, I filed and was primarily responsible for approximately 40 such class actions against almost every major lender (including Chrysler, Ford, Nissan, Toyota and GMAC) doing business in California, all of whom had failed to comply with the deficiency provisions of Rees-Levering.

7. Since 2001, I have continued to expand my consumer class action practice while heading my own law firm. At this time, I would estimate I have litigated over 100 class action cases involving violations of the post-repossession

notice requirements of the UCC, under state retail installment sales acts, and other consumer protection laws. The resulting settlements in the post-repossession notice cases, have almost invariably resulted in full relief to class members. The National Association of Consumer Advocates has praised these settlements in California as a landmark in consumer advocacy.

8. Some examples of major consumer cases I have litigated include:

Ramirez v. Toyota Motor Credit Company (Alameda Superior Court), a national class action for Vehicle Leasing Act violations for TMCC's failure to adequately disclose the capitalized cost in leases to consumers, in which TMCC's potential exposure was in the billions of dollars.

Vann v. Fireside Thrift (San Francisco Superior Court), a class action challenging the forced-place insurance practices of Fireside Thrift in connection with automobile loans, in which Fireside's liability was in the millions.

Mortera v. Ford Motor Credit Company (Santa Clara Superior Court), a class action brought to remedy Ford Credit's failure to provide post-repossession notices in compliance with the Rees-Levering Act, in which summary judgment was obtained and Ford Credit forced to pay a multi-million dollar settlement to class members.

Wong v. Triad Financial Corporation (Los Angeles Superior Court), a class action brought to obtain an injunction to stop Triad Financial from impersonating police officers and making threats of arrest to tens of thousands of borrowers. As a result of this case, which gained significant media attention, Triad fired high-level personnel, stopped the offending practice, and closed its office in California.

Paris v. Westlake Financial Services, Inc. (Los Angeles Superior Court), a protracted class action litigation concerning violations of the

Rees-Levering Automobile Sales Finance Act; the settlement resulted in full relief for the class.

Willoughby v. DT Credit Corp. (Los Angeles Superior Court), a class action brought to remedy violations of the post-repossession notice requirements of the Rees-Levering Act; settlement resulted in the lender waiving $100 million in deficiency balances of class members.

O'Neal v. Ford Motor Credit Company (San Diego Superior Court), also a Rees-Levering post-repossession notice class action, which settled with over $200 million in deficiency balance waiver benefits to class members, and several million dollars in restitution.

Pryer v. DaimlerChrysler Financial Services, LLC (Riverside Superior Court), which was another Rees-Levering post-repossession notice class action resulting in several hundred million dollars in deficiency balance waivers and restitution available for class members.

Bruno v. Capitol One (Los Angeles Superior Court). A Rees-Levering post-repossession notice class action which settlement resulted in $189 million in deficiency balance waivers for class members, and $2.1 million in restitution.

Gonzalez v. Fireside Bank (Los Angeles Superior Court). A Rees-Levering post-repossession class action which settlement resulted in $298.6 million in deficiency balance waivers for class members.

Wimberly v. Triad Financial Corp. (Orange County Superior Court). Also a Rees-Levering post-repossession notice case, which involved plaintiff's victories on contested class certification and summary judgment motions, and finally, a settlement which waived approximately $161 million in deficiency balances on behalf of over 16,000 class members.

Baker v. GE Finance. (U.S. District Court, Northern District of California). This class action challenged GE Finance's post-repossession

notices in California. The settlement resulted in over $44 million in debt relief to the class, plus restitution.

<u>Clark v. Par, Inc.</u> (U.S. District Court, Central District of California). This class action was brought against the largest auto repossession company in the United States, Par, Inc., alleging its failure to obtain appropriate repossession licenses. The case broke new ground in establishing that so-called "repossession forwarders" are subject to the Fair Debt Collection Practices Act.

<u>Sanai v. Saltz</u>, 170 Cal.App.4th 746 (2009). I drafted the appellate brief in this landmark consumer case, on the issue of federal preemption. Prior to the decision in <u>Sanai v. Saltz</u>, the courts had held for years that the federal Fair Credit Reporting Act preempted California's Consumer Credit Reporting Agencies Act. The court of appeals ruled that no preemption existed, thus leaving California consumers finally free to seek relief under the state act, which is more consumer-friendly than the FCRA.

<u>Strong v. Numerica Credit Union</u> (Yakima County Washington Superior Court). This is a pending class action seeking over $5 million in statutory damages on behalf of a class of Washington consumers who were issued defective UCC post-repossession notices by a credit union.

PLAINTIFF'S LITIGATION COSTS

7. My law firm has incurred $732.49 in litigation costs in this matter, as set forth in the expense report attached hereto as Exhibit 1.

HOURLY BILLING RATE

8. My 2016-2018 hourly billing rate was $725.

9. I am familiar with the hourly rates charged by lawyers and law firms in the Los Angeles area for non-contingent civil litigation of comparable complexity. I know that my contemporaries with 28 years of experience at firms like Morrison & Foerster and other major firms bill at

rates ranging from $800-$1500 per hour. The 2012 "Real Rate Report" issued by TyMetrix, which is now outdated by several years, was produced by a company that manages and audits legal bills for corporate legal departments.  The 2012 report found that partners at the top quartile of law firms nationwide charged an average of $900 per hour. Furthermore, the average partner billing rate for all firms surveyed in major metropolitan markets (including California) was $700. Information on this report can be found at the American Law Daily website, at http://amlawdaily.typepad.com/amlawdaily/2012/04/report-rates-keep-rising.html. Thus I believe that the hourly rates requested in this application are reasonable and representative of the rates charged by comparable lawyers in fees-for-services cases.

10. A Wall Street Journal article dated February 9, 2016 found that "A review of filings over the past three months in about two dozen bankruptcy cases shows that senior partners routinely charge between $1,200 and $1,300 an hour, with top rates at several large law firms exceeding $1,400. Proskauer Rose LLP's hourly partner billing rate has climbed as high as $1,475, while Ropes & Gray LLP's tops out at $1,450, court papers show. Kirkland & Ellis LLP's top hourly billing rate is now $1,445. And rates at two firms—Akin Gump Strauss Hauer & Feld LLP and Skadden, Arps, Slate, Meagher & Flom LLP—peak at $1,425 an hour."  The article also noted that in a survey of in-house legal departments by BTI Consulting Group, 38% of respondents had paid more than $1,000 an hour for a lawyer, and the highest rate those in the survey paid was $1,600 an hour. A true and correct copy of the WSJ article is attached hereto as Exhibit 3.

11. My hourly rates have been regularly approved by the courts. For example:

- •. In January, 2017, in <u>Tan v. Wheels Financial Group, Inc.</u>, (Alternative Resolution Centers, ARC Case No. 78M4930), Judge Harvey Schneider, formerly of the Los Angeles Superior Court and the founder of the LASC complex litigation program, awarded me $675 per hour in an individual consumer credit reporting case.
- • My 2015 hourly rate of $700 was approved as reasonable by the Hon. William Highberger of the Los Angeles Superior Court, in the matter of <u>Jimenez v. AlaskaUSA Federal Credit Union</u>, Case No. BC516470, on September 23, 2015.
- • My 2015 hourly rate of $700 was approved as reasonable by the Hon. Andre Birotte in the United States District Court, Central District of California, on February 2, 2015, in the case of <u>Vitrano v. Santander Consumer USA, Inc.</u>, Case No. 2:13-CV-02492-AB-MRW.
- • My 2014 hourly rate of $700 was approved as reasonable by the Hon. Mary Strobel in the complex department of the Los Angeles Superior Court, on August 14, 2014, in the case of <u>Wickremaratne v. Gateway One Lending & Finance</u>, Los Angeles Superior Court Case No. BC 493061.
- • My 2013 hourly rate of $700 was approved as a reasonable market rate by the Hon. Gail Andler in the complex department of the Orange County Superior Court, in the case of <u>Wimberly v. Triad Financial Corp.</u>, Case No: 30-2008-00059511, by order and judgment dated July 22, 2013.
- • My 2012 hourly rate of $675 was approved as a reasonable market rate by Judge Saundra Armstrong of the United States District Court, Northern District of California, in the case of <u>Baker v. GEMB Lending, Inc.</u>, (USDC Case No. CV10-05261 SBA), by order and judgment dated December 20, 2012.

• My 2012 hourly rate of $675 was approved as a reasonable market rate by Judge Jane L. Johnson of the complex department of the Los Angeles Superior Court, in the case of <u>Walker v. Westlake Financial</u>, (LASC Case No. BC 436725), by order and judgment dated April 10, 2012.

• My 2011 hourly rate of $650 was approved as a reasonable market rate by Judge Gregory Alarcon of the Los Angeles Superior Court, in the case of <u>Bruno v. Capital One</u>, (LASC Case No. BC 397149), by order and judgment dated July 29, 2011.

## LODESTAR CALCULATION

12. I keep detailed, computerized time records for all of my clients. It is my practice to record time contemporaneously on computer software, and to enter time rounded up to the nearest one-tenth of an hour. The records from my software program reflect that I spent 129.3 hours on this matter. Applying my 2018 hourly rate of $725, my lodestar is therefore $93,742.50 through the date of filing this motion. Attached hereto as Exhibit 2 is a true and correct copy of my time records for this case kept on Harvest software.

## LODESTAR MULTIPLIER

13. My firm, Robert Stempler, and Brandon Block took this case on a contingent basis, thus assuming the risk of not being paid at all, and resulting in an 18 month delay in payment. Because this case was hard-fought and significant amounts of time had to be blocked out to complete discovery and prepare for trial, I have turned down other viable cases in order to devote resources to this matter.

## CASE HISTORY

14. Attached hereto as Exhibit 3 is a true and correct copy of the executed settlement agreement in this case.

15. Attached hereto as Exhibit 4 is a true and correct copy of a December 8, 2010 "Declaration of Due Diligence" filed in the case of <u>Unifund v. Bidwal</u>, Los Angeles Superior Court Case No. 10E14426.

16. Attached hereto as Exhibit 5 is a true and correct copy of a July 6, 2010 collection letter produced by defendant Unifund in this action, which is addressed to plaintiff at his correct address in Union City, California.

17. Attached hereto as Exhibit 6 are true and correct copies of excerpts from the Quall Cardot LLP collection log on plaintiff Jagdeep Bidwal's account, produced by defendant Matthew Quall in this action.

18. I have reviewed the public court files in <u>Unifund v. Bidwal</u>, Los Angeles Superior Court Case No. 10E14426, which reveals that between May, 2012 and July, 2015, the defendant collection lawyers continued "serving" documents to Jagdeep Bidwal at his old Los Angeles address on Kester Avenue, *after* their own skip tracing revealed on May 14, 2012 that Bidwal actually lived in San Ramon, California. Those documents included:

- An October 11, 2012 memorandum of costs.
- A March 18, 2013 bank levy.
- A January 12, 2015 firm change of address.

19. Attached hereto as Exhibit 7 are true and correct copies of excerpts from the Unifund collection log on plaintiff Jagdeep Bidwal's account, produced by defendant Unifund in this action.

20. Attached hereto as Exhibit 8 is a true and correct copy of a June 5, 2017 settlement offer letter I sent to defendant Matthew Quall, before he had hired counsel. I did not receive a response.

Case 3:17-cv-02699-LB   Document 113   Filed 01/28/19   Page 11 of 12

21. Attached hereto as Exhibit 9 is a true and correct copy of a December 21, 2017 email I received from counsel for the EDP defendants, Steven Nimoy.

22. Attached hereto as Exhibit 10 is a true and correct copy of a January 8, 2018 email I sent to counsel for the EDP defendants, Steven Nimoy. I did not receive a response.

23. Attached hereto as Exhibit 11 is a true and correct copy of a January 16, 2018 letter (with exhibits are omitted for brevity), which I received from Tomio Narita, counsel for the Unifund/Quall defendants.

24. Attached hereto as Exhibit 12 is a true and correct copy of an April 23-24, 2018 email exchange between me and Tomio Narita, counsel for the Unifund/Quall defendants. I received no settlement counteroffer from defendants to my April 24, 2018 email.

25. On May 23, 2018, I had a telephone conference call with Susan Appel, Unifund's in-house counsel since 2004, and another Unifund in-house lawyer, Trudy Weiss. I explained to these lawyers that I believed there was no defense to Mr. Bidwal's case based on "bona fide error," principally because of the November 11, 2016 Unifund log entry admitting it was given documents proving the bad service address, but nevertheless instructed its lawyers to try to extort exactly the amount of the unlawful bank levy from plaintiff. <u>See</u> Exhibit 7 hereto. I also explained some of the details that showed that Mr. Bidwal had suffered emotional distress as a result of the levy and unlawful judgment. These lawyers said they would consider what I had said, but never made any settlement offer. The parties proceeded to mediation, which Ms. Weiss attended as Unifund's representative, and the mediation failed.

26. On June 14, 2018, the parties attended mediation in San Francisco. The process server defendants, Ascorra and Williams, failed to

10                                          DECL OF A TRUEBLOOD

appear personally, despite having being specifically ordered to do so in April, 2018. Right before the mediation began, Unifund's process server appeared and served Mr. Bidwal personally with the summons and complaint in the state court action, apparently to deliver an intimidating "message." In my opinion, this reckless tactic created bitterness that impeded reaching a settlement that day.

27. Attached hereto as Exhibit 13 is a true and correct copy of a settlement email exchange in July, 2018 between me and defense counsel Tomio Narita.

28. Attached hereto as Exhibit 14 is a true and correct copy of the settlement agreement which plaintiff reached with defendant Jacobbi Williams in this matter.

29. Attached hereto as Exhibit 15 is a true and correct copy of a settlement email exchange dated September 14, 2018, between me and defense counsel Tomio Narita.

30. Attached hereto as Exhibit 16 is a true and correct copy of a September 29, 2016 writ of execution filed by the Unifund/Quall defendants in the state court debt collection case.

Executed on January 28, 2019. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

/s/ *Alexander B. Trueblood*
Alexander B. Trueblood