TOMIO B. NARITA (SBN 156576)
tnarita@snllp.com
SIMMONDS & NARITA LLP
44 Montgomery Street, Suite 3010
San Francisco, CA 94104-4816
Telephone: (415) 283-1000
Facsimile:   (415) 352-2625

Attorneys for Defendants
Unifund CCR Partners;
Unifund Portfolio A, LLC;
Matthew W. Quall;
Lang, Richert & Patch, A Professional Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAGDEEP S BIDWAL,<br><br>Plaintiff,<br><br>vs.<br><br>UNIFUND CCR PARTNERS; UNIFUND PORTFOLIO A, LLC; MATTHEW W. QUALL; LANG, RICHERT & PATCH, A PROFESSIONAL CORPORATION; EDP/ONE TOUCH; J. ASCORRA; J. WILLIAMS; AND DOES 1 TO 10;<br><br>Defendants. | CASE NO.: 3:17-cv-02699-LB<br><br>**DEFENDANTS' OBJECTIONS TO AND MOTION TO STRIKE DECLARATION OF JOHN D. O'CONNOR IN SUPPORT OF PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS FEES AND COSTS**<br><br>Date: April 4, 2019<br>Time: 9:30 a.m.<br>Dept.: C<br><br>The Honorable Laurel Beeler |

**TABLE OF CONTENTS**

I.   INTRODUCTION.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1.

II.  ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2.

    A.   Legal Standard Governing Motions To Strike Expert Testimony. . . . . 2.

    B.   The O'Connor Declaration Should Be Stricken, Because O'Connor Has Not Supported His Opinion Using Reliable Factual Data, Has Not Explained His Methodology, And Has Not Offered An Opinion That Is Relevant To The Attorney's Fee Motion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3.

III. CONCLUSION.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11.

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Cuviello v. Feld Entertainment, Inc.,*
2015 WL 154197 (N.D. Cal. 2015).................................................. 1

*Daubert v. Merrell Dow Pharms., Inc.,*
509 U.S. 579 (1993)........................................................................ 2

*Johnson v. Wayside Property, Inc.,*
2014 WL 6634324 (E.D. Cal. Nov. 21, 2014). ............................... 2

*Kumho Tire Co. v. Carmichael,*
526 U.S. 137 (1999)................................................................... 2, 3

*United States v. Hermanek,*
289 F.3d 1076 (9th Cir. 2002)........................................................ 3

*United States v. Nosal,* 2014 WL 2109948
(N.D. Cal. May 20, 2014).............................................................. 1

*United States v. Prime,*
431 F.3d 1147 (9th Cir. 2005)........................................................ 2

*White v. Ford Motor Co.,*
312 F.3d 998 (9th Cir. 1992).......................................................... 2

*Younan v. Rolls-Royce Corp.,*
2013 WL 1899919 (S.D. Cal. May 7, 2013).................................. 3

## FEDERAL STATUTES

Fed. R. Evid. 702............................................................................ 2

## I. INTRODUCTION

In an effort to bolster their outsized request for attorney's fees, counsel for Plaintiff Jagdeep S. Bidwal ("Bidwal") retained a purported expert witness, John D. O'Connor, who submitted a declaration to support the motion. The O'Connor Declaration does not meet the standard required for expert testimony, and it should therefore be stricken, and his opinions should not be considered.

Mr. O'Connor does not base his opinions on relevant data. He makes no attempt to evaluate the rates actually awarded to FDCPA practitioners in the Northern District of California. Indeed, he does not rely upon a single example of any rate charged by any attorney for any legal work performed in this Court. Nor does he rely on any data reflecting what FDCPA practitioners of similar experience actually charge their clients for similar work.

Instead, relying solely on awards made by Southern California courts, and on his unsupported speculation about what AmLaw 500 attorneys located in Southern California might charge their clients, Mr. O'Connor opines that "the requested rates and the hours billed" by counsel for Bidwal are "reasonable," and further opines that in light of the "skill and efficiency" displayed by Bidwal's counsel, the application of "some multiplier is appropriate." *See* Declaration of John D. O'Connor ("O'Connor Decl."), Docket 112-1, ¶ 31.

Mr. O'Connor has not explained the methodology he used to determine a reasonable rate for the services provided by Bidwal's counsel. Nor has he relied on proper data or reasoning to support his opinions. His declaration and opinions will not assist the Court. In previous cases filed in this Court, Mr. O'Connor's opinions have been rejected as "pure speculation" and "unhelpful" in determining reasonable attorney's fees.[1] The same result should follow here.

---

[1] *See Cuviello v. Feld Entertainment, Inc.*, 2015 WL 154197 (N.D. Cal. 2015) (rejecting Mr. O'Connor's opinion on reasonable rates as "pure speculation lacking factual basis."); *United States v. Nosal*, 2014 WL 2109948 (N.D. Cal. May 20, 2014)

For all of the reasons explained herein, the Court should strike the O'Connor Declaration, and his opinions should not be considered.

## II. ARGUMENT

### A. Legal Standard Governing Motions To Strike Expert Testimony

Under Federal Rule of Evidence 702, a qualified expert may testify only if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

The Supreme Court has held that Rule 702 requires the trial judge to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). The basic "gatekeeping" requirement of determining relevance and reliability as laid out by *Daubert* applies to the admissibility of expert opinions of scientists and non-scientists alike. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141-42 (1999); *United States v. Prime*, 431 F.3d 1147, 1152 (9th Cir. 2005); *White v. Ford Motor Co.*, 312 F.3d 998, 1007 (9th Cir. 1992).

Thus, under *Daubert*, the court conducts "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *See Daubert*, 509 U.S. at 592-93. As part of this process, the court must determine whether the expert has adequately explained the methodology used to reach the opinion. "As a prerequisite to making the Rule 702 determination that an expert's

---

(rejecting Mr. O'Connor's opinion on reasonableness of attorney's fees); *see also Johnson v. Wayside Property, Inc.*, 2014 WL 6634324 (E.D. Cal. Nov. 21, 2014) (rejecting Mr. O'Connor's opinion as "not helpful" in determining reasonable rates).

methods are reliable, the court must assure that the methods are adequately explained." *United States v. Hermanek*, 289 F.3d 1076, 1094 (9th Cir. 2002).

The court has "considerable leeway" in deciding how to determine if "particular expert testimony is reliable." *Kumho Tire*, 526 U.S. at 152. In so doing, the court must consider "the expert's particular expertise, and the subject of his testimony." *Id.* at 147. The gatekeeping inquiry must be tailored to the facts of the case and the type of expert testimony at issue. *Id.*

As the proponent of the opinion, Bidwal bears the burden of establishing that his expert's opinion is admissible. *See Younan v. Rolls-Royce Corp.*, 2013 WL 1899919, *16 (S.D. Cal. May 7, 2013).

**B. The O'Connor Declaration Should Be Stricken, Because O'Connor Has Not Supported His Opinion Using Reliable Factual Data, Has Not Explained His Methodology, And Has Not Offered An Opinion That Is Relevant To The Attorney's Fee Motion**

Mr. O'Connor is a licensed attorney who claims to be an "attorney's fees expert" who has been retained on many occasions, including on prior cases by counsel for Bidwal. *See* O'Connor Decl., ¶¶ 1, 24. Mr. O'Connor does not say he has ever handled the prosecution of, or defense of, an FDCPA case. He claims to have experience representing financial institutions, and as an expert on "cases involving financial or credit issues," but he does not identify those cases, nor does he say his experience involved any FDCPA claims. *Id.* at ¶25. He does not cite to any court that has relied upon his opinion when determining a reasonable rate to be charged for prosecuting or defending an FDCPA claim. In short, Mr. O'Connor has not established he has any "specialized knowledge" that allows him to give competent expert testimony to this Court regarding the particular legal skills that are needed to handle an FDCPA case of this nature.

Mr. O'Connor's Declaration says nothing about rates actually paid by clients to attorneys, or rates awarded by this Court to attorneys, for legal services provided in the Northern District of California. He does not identify the hourly rate actually <u>paid</u> to, or awarded by the Court to, <u>any</u> attorney of <u>any</u> level of experience in connection

with <u>any</u> FDCPA case in this Court.  Nor does he list the rates paid to, or awarded by this Court to, any attorney at any level for any consumer protection case.  Thus, on the key issue relating to rates in this case – *i.e.*, determining the reasonable rate for attorneys of reasonably comparable skill and reputation for similar services performed in this judicial district – his Declaration adds absolutely nothing.

Rather than relying on actual data regarding the fees charged by or awarded to lawyers in this Court, Mr. O'Connor bases his opinion upon layers of speculation.  In the first layer, he speculates that reasonable rates for Northern California attorneys are the same as rates for Southern California attorneys, and then his opinion relies solely on rate data from Southern California.  The only testimony he offers to persuade this Court to make this huge analytical leap with him, however, is his unsupported and conclusory statement that it "has been my experience that the rate structure of the San Francisco Bay Area is virtually identical to that in the greater Los Angeles area."  *See* O'Connor Decl., ¶ 20.

Mr. O'Connor never describes the "experience" that led him to this key assumption, upon which his entire opinion turns.  What are the facts, exactly, that have led him to conclude that the "rate structures" are "virtually identical" between San Francisco and Los Angeles?  What does he mean by the term "rate structure" in the first place?  What size firms have these rate structures, and what is the nature of their practice?  Mr. O'Connor never explains what he means by his term "rate structure," nor does he tie his opinion about rate structures to any facts or experience.  He also does not provide a time frame during which the "rate structures" have been "virtually" identical in San Francisco and Los Angeles.[2]

---

[2] In Paragraph 29 of his Declaration, Mr. O'Connor describes the facts in an inaccurate and argumentative fashion, claiming the case involved defendants "who furtively obtained a collection default judgment in Los Angeles by filing false affidavits of service with the court, despite their knowledge that Plaintiff was not actually served." These are false allegations, and they undermine the credibility and the reliability of his opinion. In Paragraph 31, Mr. O'Connor opines, in a conclusory fashion, that a multiplier

In Paragraph 34, O'Connor concedes it "may be unclear which set of prevailing rates" should be used to determine Mr. Trueblood's rate, but ultimately Mr. O'Connor decides it should be those of the "AmLaw 500" law firms, which he says are "the largest 500 firms in the country." *See* O'Connor Decl., ¶ 34. Mr. Trueblood, however, is a solo practitioner who apparently does not employ any other attorneys or support staff. Mr. O'Connor does not explain to the Court the basis for his opinion why Mr. Trueblood should be awarded a rate that is "squarely in the middle range of the 'AmLaw 500' firms practicing in large metropolitan areas such as Los Angeles and San Francisco." *Id*.

Mr. O'Connor states, in conclusory fashion, that the rates charged by the AmLaw 500 firms are "generally well known" but he does not explain how they are generally known, or how he has come to know them. In fact, he does not list the rates actually charged by <u>any</u> of the firms in the AmLaw 500. Nor does he does he explain why Mr. Trueblood – a solo practitioner from Southern California handling an FDCPA case in Northern California – should be awarded the same rate as an attorney from one of the largest firms in the country.

In Paragraph 35 of his Declaration, Mr. O'Connor lists five firms "in the Los Angeles area" that allegedly charge "these AmLaw 500 rates" but he does not say what rates those firms actually charge, nor does he provide any factual basis for this opinion. This is simply speculation. Mr. O'Connor does not identify a single lawyer from any of those five firms, nor does he testify what rate is charged by any such

---

is appropriate in this case, because of the "skill and efficiency" of the three lawyers retained by Mr. Bidwal. He does not specify any facts, however, to support this conclusion that these attorneys worked with any particular level of skill or efficiency. Nor has he laid a foundation by showing the Court that he is actually familiar with the skills needed to handle and FDCPA case, or how to handle one in an efficient manner. Put bluntly, there is nothing to support Mr. O'Connor's throw away remark that a multiplier should be awarded. Indeed, his cavalier attitude in providing such an unsupported opinion further undermines his credibility and the reliability of his other opinions.

lawyer, or what services are provided by any such lawyer.  He does not identify any lawyer from any of these five firms who has ever handled an FDCPA case in the Northern District of California (or in any other court, for that matter), nor does he provide any factual basis for the Court to conclude that any of the unidentified lawyers at these five firms is comparable in skill and experience to Mr. Trueblood.

In Paragraph 36, Mr. O'Connor claims he is "sure" there are lawyers at these same five firms who charge "super premium" rates between $900 and $1,500 hour, for certain "high-value" and "niche" services.  Again, this statement is pure speculation.  Why is he so sure?  He does not give the Court any factual basis for this conclusion.  He does not list a single lawyer who charges between $900 to $1,500 at these firms (or at any firm), nor does he state what services are performed by these unidentified attorneys at these alleged rates.  He does not claim that any of these lawyers handle FDCPA matters in the Northern District of California, or in any court in the country.

In Paragraph 37, Mr. O'Connor seeks to justify his conclusion that the $725 per hour rate sought by Mr. Trueblood is reasonable, by comparing that rate to the rates allegedly charged by the unidentified lawyers who allegedly charge "super premium" rates.  He notes that $725 is lower than $900 or $1500, but the Court does not need his assistance for this basic arithmetic.

Mr. O'Connor then builds on his speculation with more speculation, claiming that $725 per hour sought by Mr. Trueblood is a rate "one would expect when hiring any of the reputable business litigation firms in Los Angeles or San Francisco." *See* O'Connor Decl., ¶ 37.  Once again, there is no factual basis for this statement.  Mr. O'Connor has not identified a single lawyer at any of those five firms – or any at any firm in the country – who charges a $725 rate.  If such an attorney exists, he or she has not been identified, nor has his or her practice been identified or compared to the services performed by Mr. Trueblood in this case.

Mr. O'Connor does not testify which clients would "expect" to pay $725 per hour to an attorney, nor does he describe what those unidentified clients would expect that attorney to do for them at that rate. He does not state that any client would expect to pay, or has ever paid, $725 per hour to any attorney to prosecute or defend an FDCPA case in this Court, or in any court. Nor does Mr. O'Connor explain why it is reasonable to compensate a solo practitioner like Mr. Trueblood at the same $725 per hour rate as this unidentified lawyer from an unidentified AmLaw 500 Southern California law firm. The larger AmLaw firms allegedly charge what Mr. O'Connor calls "standard, big-firm rates," and although Mr. O'Connor states there are "several reasons" why Mr. Trueblood should be paid at that same rate, he never states what any of those reasons are. *Id.* at ¶ 37.

In Paragraph 38, Mr. O'Connor cites to an order issued by the Los Angeles County Superior Court in 2009 which awarded $495/hour to Mr. Trueblood. This award was not made in this District, and thus has no bearing on the reasonable rates for Mr. Trueblood's services in this case. Mr. O'Connor tells this Court nothing about the claims at issue in that case, whether it was complicated or simple, what defenses were raised, or why he thinks the legal services performed in that case are comparable to this case. In her order, Judge Duffy-Lewis says the $495 per hour for Trueblood was consistent with the "prevailing rate for private attorneys in the community conducting non-contingent litigation of this type," which means the Court must have considered what defense attorneys in Los Angeles were being paid for the same type of work. If this Court follows the same path here, it will find that a reasonable rate for Mr. Trueblood is in the $300-$350 per hour range.

In Paragraph 39 of his Declaration, Mr. O'Connor cites to an award made by an arbitrator in private arbitration pending in Los Angeles, styled as *Tan v. Wheels Financial Group, Inc*. This is not an award of a court, was not issued in this district, and has no relevance to determining a reasonable rate for Mr. Trueblood's work in this action. Mr. O'Connor does not state what the claims were in the *Tan* case, nor

does he opine that the services performed by Mr. Trueblood in that case were the same or similar to what he did in this action. That case began as a putative class action and much of the time sought by the application was incurred fighting a motion to compel arbitration. The arbitrator's award also pointed out that the filing of that case led to a change in practice by the defendants, so the public at large benefitted. *See* O'Connor Decl., Ex. C.[3]

In Paragraph 40, Mr. O'Connor cites to the rates requested by attorneys at the McGuire Woods firm for time they spent in connection with a discovery motion in a case pending in Los Angeles County Superior Court. Once again, the rates sought by or awarded to attorneys for services rendered in Los Angeles have no bearing on this case. Further, Mr. O'Connor does not say that it was an FDCPA case, nor does he say what services were performed by those attorneys. He does not explain why he believes the rates charged in that case are useful to this Court in determining a reasonable rate to be awarded in this case. He does not give any reason why the rates charged by attorneys from the McGuire Woods firm are comparable to the rate that should be awarded to Mr. Trueblood.

Regarding Mr. Stempler's rate, the support offered by Mr. O'Connor is even more attenuated. In Paragraph 45 of the Declaration, Mr. O'Connor points out that in 2008, Mr. Stempler was awarded $350/hour for a case pending in the Central District of California, *Miller v. Midland Funding LLC*. Again, the present case is pending in the Northern District of California, so the rate awarded by the Central District of California has no bearing here. Mr. O'Connor does not state what kind of claims were asserted in the *Miller* case, nor does he describe any of the services performed by Mr. Stempler in that action. Mr. O'Connor also does not explain why this Court

---

[3] The arbitrator in that case reduced Mr. Trueblood's lodestar by 20% because he "took on tasks that would ordinarily be performed by a first year associate" and because Mr. Trueblood and Mr. Block "reviewed and revised each others work product" and both appeared at hearings and conferences which resulted in "duplicative work."

should compensate Mr. Stempler at a rate that is 71% higher than the rate awarded by the Central District of California in the *Miller* action.

Indeed, Paragraph 46 of Mr. O'Connor's Declaration shows that Mr. Stempler was awarded that same $350/hour from the Central District of California three years later, in 2011, in *Hernandez v. Erin Capital Management, LLC*. There is no evidence to support Mr. O'Connor's unstated assumption that the services performed by Mr. Stempler in this case bear any resemblance to what he did in the *Hernandez* action. To the contrary, the *Hernandez* court specifically found that case was "not a simple, run of the mill FDCPA case, but involved multiple jurisdictions and a past pattern and practice of similar false debts. This meant that Plaintiff's counsel had to do jurisdictional research, consult attorneys in both New York and California, and look into other cases involving the Defendant." *See* O'Connor Decl., Ex. F. The present case, by contrast to the *Hernandez* action, is a "run of the mill FDCPA case" and therefore Mr. Stempler should be awarded an even lower rate than in *Hernandez*.

Mr. O'Connor also ignores the fact that the *Hernandez* court justified the fee award to Mr. Stempler by pointing to the "greater service to the public" that was served by the case:

> This case involved Defendants who allegedly had a practice, spanning at least two states, of using this country's court systems to defraud consumers. By succeeding on the merits, Plaintiffs benefitted other members of the public who might have otherwise fallen victim to this scheme if left unchecked. The public has a strong interest in ensuring that attorneys invest the necessary time to stop such practices. The success in this case, both in terms of damages and public impact, supports a full award of the lodestar figure.

*Id*. By contrast, the filing and prosecution of the claims in this case provided no public benefit.

Despite the fact that there was no increase in the rate awarded to Mr. Stempler by the Central District of California in the three year period between 2008 and 2011, and the fact that there is no evidence that any court has ever awarded more than $350 per hour for Mr. Stempler's time, Mr. O'Connor opines that it is reasonable for this Court to award $600 per hour for Mr. Stempler's time. He provides no reasoning or

analysis for this conclusion.  In Paragraph 47 of his Declaration, Mr. O'Connor merely states that with "8 and 11 years of legal fee increases since the Miller and Hernandez awards, Mr. Stempler's prior award of $350 per hour is equivalent to an award of $600 today."  *See* O'Connor Decl, ¶ 47.  He does not explain why $350 is now "equivalent" to $600, particularly in light of the fact that Mr. Stempler's rate appears to have topped out at $350 several years ago.

Mr. O'Connor also seeks to justify a $600 rate for Mr. Stempler by again pointing to the rates sought by the McGuire Woods attorneys in the case pending in Los Angeles.  For the reasons previously explained, the rates sought by those attorneys for unidentified services they performed in Los Angeles on an unknown type of dispute have no bearing on the rates that should be awarded to Mr. Stempler.

Mr. O'Connor's next opinion, that the "hours spent by Plaintiff's counsel were reasonable and efficiently spent," is also wholly unsupported.  *See* O'Connor Decl., ¶ 53.  He claims, in conclusory fashion, that counsel did not "flail inefficiently, as have many lawyers I have observed, or perform unnecessary work in order to increase his [sic] fees," but he provides no factual basis to support this opinion.  *Id.* at ¶ 54.  He does not define what he means by "flail inefficiently," nor has he demonstrated he has any specialized knowledge about "flailing" or about FDCPA matters which would provide a foundation to underpin his opinion.  Mr. O'Connor has not shown that he has any expertise on what is "necessary" versus what is "unnecessary" work in this kind of case.  His characterization of the reasonableness of the alleged settlement offers, the "wrongful conduct" of Defendants and the alleged "brinkmanship" of Defendants' counsel is simply argumentative and is not proper opinion testimony.

Finally, Mr. O'Connor's opinion that a multiplier is appropriate in this matter is wholly without support.  In particular, there is nothing to support his assertion that counsel were "precluded from other employment opportunities" since Plaintiff's lawyers have not identified any cases they turned down, or why this case caused them to turn down the matter.  His opinion also does not provide a basis for his claim that

the result was "exceptional" given how he has not shown the Court that he has any familiarity with FDCPA matters, or what is a normal versus an exceptional result.

Finally, it is simply untrue, as Mr. O'Connor claims, that a 2.0 multiplier is "not only appropriate, but necessary to further the goal of encouraging private counsel to represent consumers" in FDCPA actions. There are thousands of FDCPA cases filed across the country each year, and many such cases are filed in this Court. No evidence has been submitted indicating that this Court has ever awarded a multiplier in an FDCPA case, yet consumers seem to have little problem finding lawyers to file them here.

### III.  CONCLUSION

For each of the reasons discussed herein, the Court should strike the Declaration of Mr. O'Connor and should reject the opinions he has expressed.

DATED: March 4, 2019             SIMMONDS & NARITA LLP
                                 TOMIO B. NARITA


                                 By:   /s/ Tomio B. Narita
                                       Tomio B. Narita
                                       Attorneys for Defendants