1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| JAGDEEP S. BIDWAL | Case No. 3:17-cv-02699-LB |
| Plaintiff. | |
| v. | **ORDER (1) GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND (2) DENYING DEFENDANT'S MOTION TO STRIKE** |
| UNIFUND CCR PARTNERS; UNIFUND PORTFOLIO A, LLC; MATTHEW W. QUALL; LANG, RICHERT & PATCH, A PROFESSIONAL CORPORATION; ELECTRONIC DOCUMENT PROCESSING, INC.; JULIO ASCORRA. | Re: ECF No. 112 |
| Defendants. | |

## INTRODUCTION

The plaintiff defaulted on a credit-card debt to Citibank and sued the defendants — who assumed the debt — based on their allegedly illegal attempts to collect the debt (allegedly by fraudulent service and an invalid default judgment and writ of execution), in violation of the federal Fair Debt Collections Practices Act ("FDCPA") and California's Rosenthal Fair Debt Collection Practices Act.[1] By September 2018, the parties settled the case for $24,500, stipulated

---

[1] Compl. – ECF No. 1 at 6–8 (¶¶ 33, 39–43). Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF–generated page numbers at the top of documents.

that the plaintiff was the prevailing party, and agreed that the court would decide a fees motion.[2] The plaintiff asked for fees of $381,615 (for 288.6 hours worked by three attorneys for a total of $190,807.50 plus a 2.0 multiplier) and costs of $2,267.48.[3] The defendants challenge the fees as unreasonable but do not challenge costs.[4] The court awards $95,275 in reasonable fees and $2,267.48 in costs.

## STATEMENT

### 1. Facts Underlying the Complaint

The defendants are as follows. Unifund is a debt-collection agency, its collection lawyers are Quall Cardot and Lang Richert & Patch, and the lawyers' process servers are EDP, Williams, and Ascorra.[5]

The plaintiff defaulted on his credit-card debt to Citibank, which wrote off the balance of $3,665.01 in September 2008 and sold the debt to Unifund in 2010.[6] The plaintiff's address on the account was 4631 Kester Avenue, Apartment 103, Sherman Oaks, California.[7] The plaintiff alleges that he moved from the Kester address to the Bay Area at around the time of default, but he never gave Citibank notice that he moved, which meant that the Kester address remained his account address.[8] On July 6, 2010, Unifund sent a collection letter to the plaintiff at his new address in Union City.[9]

---

[2] Mot. – ECF No. 112 at 6.

[3] Reply – ECF No. 123 at 2.

[4] Opp. – ECF No. 120.

[5] FAC – ECF No. 25 at 2–3 (¶¶ 4–12); Mot. to File Second Amended Complaint – ECF No. 94 at 2–3.

[6] FAC – ECF No. 25 at 4 (¶ 14).

[7] Citibank Statements, Ex. A to Narita Decl. – ECF No. 120-1 at 17.

[8] FAC – ECF No. 25 at 4–5 (¶¶ 18–20); Citibank Statements, Ex. A to Narita Decl. – ECF No. 120-1 at 17.

[9] Unifund Letter, Ex. 5 to Trueblood Dec. – ECF No. 113-5 at 1.

United States District Court
Northern District of California

United States District Court
Northern District of California

Unifund referred the case to its attorneys, Lang Richert & Patch, for collection. On September 7, 2010, the firm sent a collection letter to the Kester address.[10] It was not returned undeliverable.[11]

In November 2010, Unifund sued the plaintiff in Los Angeles County Superior Court. Mr. Quall was counsel of record.[12] On December 6, 2010, Lang Richert's process server EDP tried unsuccessfully to serve the plaintiff at the Kester address.[13] EDP's "Declaration re Diligence" states that service was unsuccessful because "subject not at this address" and "there are new tenants living at the given apt number."[14]

The defendants engaged in the following efforts to confirm the plaintiff's address.

In December 2010, Lang Richert submitted a request to the Sherman Oaks Postmaster to determine whether the plaintiff submitted a change-of-address form, and the Postmaster responded that there was no change-of-address order on file.[15] EDP thereafter made three attempts to serve the plaintiff at the Kester address and then, on June 12, 2011, served the plaintiff by substitute service at the Kester address by leaving a copy of the summons and complaint with the occupant and mailed a copy to the address.[16]

On October 13, 2011, the state clerk of court entered default judgment against the plaintiff and in favor of Unifund in the amount of $3,665.01, $1,116.57 in accrued interest, and $303.00 in costs for a total of $5,084.58.[17]

---

[10] Narita Decl. – ECF No. 120-1 at 5 (¶ 8); Letter, Ex. B to Narita Decl. – ECF No. 120-1 at 13.

[11] Letter, Ex. B to Narita Decl. – ECF No. 120-1 at 13.

[12] FAC – ECF No. 25 at 4 (¶ 17); Opp. – ECF No. 120 at 8; Declaration re Diligence, Ex. 4 to Trueblood Decl. – ECF No. 113-4 at 1.

[13] FAC – ECF No. 25 at 4 (¶ 18); Opp. – ECF No. 120 at 8.

[14] Declaration re Diligence, Ex. 4 to Trueblood Decl. – ECF No. 113-4 at 1.

[15] Request for Change of Address, Ex. D to Narita Decl. – ECF No. 120-1 at 88.

[16] FAC – ECF No. 25 at 4 (¶ 19); Opp. – ECF No. 120 at 9.

[17] FAC – ECF No. 25 at 5 (¶ 21); Opp. – ECF No. 120 at 9.

In May 2012, the collection lawyers' skip tracing showed that the plaintiff lived in San Ramon.[18] The state-court files show that the defendants continued serving the plaintiff at the Kester address, including an October 2012 memorandum of costs, a March 18, 2013 bank levy, and a January 2015 change of address.[19]

On October 19, 2016, the collection lawyer levied the plaintiff's bank accounts in Northern California in the amount of $4,594.41.[20] The plaintiff called Quall Cardot, said that he had not been served, and provided proof of his address in 2010 including his Homeland Security documents and his marriage certificate.[21]

In February 2017, Unifund stipulated to set aside the default judgment.[22]

## 2.  Relevant Procedural and Settlement History

The plaintiff filed his initial complaint in May 2017.[23] According to Plaintiff's counsel, they offered early to settle for $17,000 cash plus $7,500 in value for dismissal of the state case. (Ultimately, 18 months into the case, the federal case settled for $24,500 plus attorney's fees and costs.[24]) The timeline after the filing of the complaint is as follows:

| | |
|---|---|
| June 5, 2017: | Plaintiff offers $36,322.33 to settle case (inclusive of $12,233 in fees).[25] |
| June–August 2017: | Rule 26(f) conference and report, discuss ADR options[26] |
| August 2017: | First Amended Complaint[27] |

---

[18] Skip Trace, Ex. 6 to Trueblood Dec. – ECF No. 113-6 at 1.

[19] Trueblood Decl. – ECF No. 113 at 10 (¶ 18).

[20] Debt Collection Records, Ex. 6 to Trueblood Decl. – ECF No. 113-6 at 3–4.

[21] *Id.* at 3–4; Collection Notes – ECF No. 113-7 at 1.

[22] FAC – ECF No. 25 at 6 (¶ 28); Mot. – ECF No. 112 at 4.

[23] Compl. – ECF No. 1.

[24] Mot. – ECF No. 112 at 4.

[25] Settlement Proposal, Ex. 8 to Trueblood Decl. – ECF No. 113-8 at 2 (included dismissal of state case).

[26] ADR Certification – ECF No. 18; Joint Case Management Statement – ECF No. 19.

[27] FAC – ECF No. 25.

4

| | |
|---|---|
| September 2017: | Answer from Lang, Richert, & Patch; Quall/Unifund serve initial disclosures; Draft Motion to Strike shared with defendants[28] |
| October 2017: | Amended Answer from EDP et al[29] |
| December 2017: | EDP offers to settle for $5,000 (inclusive of fees/costs)[30] |
| January 2018: | Plaintiff counters with $17,000 plus fees and costs[31] |
| January 2018 | Unifund/Quall demand dismissal of case[32] |
| February 2018: | Initial case-management conference[33] |
| March-April 2018 | Unifund/Quall ask to excuse client reps from attending mediation; court orders attendance[34] |
| April 2018 | EDP initial disclosures[35] |
| April 23, 2018 | Unifund/Quall asks for updated demand; plaintiff offers $18,000 for Unifund/Quall or $24,000 global, plus fees/costs[36] |
| May 2018 | Settlement talks with Unifund in-house counsel[37] |
| June 14, 2018 | Mediation; process servers are no shows; defendants serve plaintiff with state court complaint[38] |
| June 26, 2018 | Plaintiff offers $20,000 plus dismissal of state case plus fees/costs[39] |
| July 2018 | Settlement offers from defendants of $10,000 and later $12,000 plus fees/costs (but no dismissal of state case); plaintiff counters with $20,000 plus dismissal plus fees/costs[40] |

---

[28] Answer – ECF No. 31; Billing Records – ECF No. 112-3 at entry 9/11/17.

[29] Amended Answer – ECF No. 41.

[30] Settlement Emails – ECF No. 113-9 at 1–2.

[31] Settlement Emails – ECF No. 113-10 at 1–2.

[32] Defense Letter – ECF No. 113-11 at 1–4.

[33] Case-Management and Pretrial Order – ECF No. 51.

[34] Minute Entry – ECF No. 50; Order – ECF No. 57 at 1.

[35] Mot. – ECF No. 112 at 5.

[36] *Id.* at 4–5.

[37] Trueblood Decl. – ECF No. 113 at 11 (¶ 25).

[38] *Id.* at 11–12 (¶ 26).

[39] Settlement Emails – ECF No. 113-12 at 1.

[40] Settlement Emails – ECF No. 113-13 at 1–6.

| July 2018 | Plaintiff responds to "extensive" discovery[41] |
|---|---|
| August 2018 | Parties dispute whether federal case should be stayed; plaintiff files second amended complaint; plaintiff settles with defendant Williams (the process server) for $1,000[42] |
| September 14, 2018: | Case settles for remaining defendants for $24,500 ($16,000 in cash from Unifund/Quall, $1,000 from Williams, dismissal of the state case (a $7,500 value) with the court to determine fees and costs[43] |
| Fall 2018: | Finalize Written Settlement Agreement[44] |
| December 28, 2018 | Stipulated Dismissal[45] |

At the initial case-management conference in February 2018, the court limited discovery to documents to keep costs low.[46] After the court referred the case for a settlement conference, the parties disputed whether the stay remained in place, and the court ordered them to file a discovery plan, reminding them that they should keep costs low.[47] On July 30, 2018, the parties reported the following: (1) the plaintiff wanted to stay the federal case and favored staying discovery; (2) the plaintiff and the defendants propounded interrogatories, requests for admission, and requests for production of documents; and (3) the defendants noticed depositions of plaintiff's wife, mother, and father, all in Southern California (despite their living in the Bay Area).[48] On August 2, 2018, the court ordered the parties to file a briefing schedule for the motion to stay within seven days.[49] The plaintiff decided not to file the motion.[50] At Unifund's request, on August 16, 2018 at a case-management conference, the court ordered the plaintiff to respond to the defendants' 18 requests

[41] Billing Records – ECF No. 112-3 at 16–18; Billing Records – ECF No. 113-2 at 7–8.

[42] Joint Discovery Plan – ECF No. 84 at 2, 9; Williams Release – ECF No. 113-14 at 1–3.

[43] Mot. – ECF No. 112 at 7; Settlement Emails – ECF No. 113-5 at 1–5; Notice of Settlement – ECF No. 101 at 2.

[44] Mot. – ECF No. 112 at 7.

[45] Dismissal – ECF No. 111.

[46] Case-Management and Pretrial Order – ECF No. 51 at 1, 3.

[47] Orders – ECF Nos. 78, 79.

[48] Case-Management Statement – ECF No. 84 at 2–9.

[49] Minute Entry – ECF No. 87.

[50] Plaintiff Status Report – ECF No. 88 at 2.

6

for admission and 20 interrogatories and gave the parties 21 days to file a deposition schedule and a joint letter addressing any discovery disputes.[51] On September 13, 2018, the parties filed a deposition schedule, and on September 19, 2018, the plaintiff filed a notice of settlement.[52]

### 3.   Charts Showing (1) Attorney Time Billed by Task and (2) Total Fee Request[53]

| Task | Trueblood Hours | Stempler Hours | Block Hours |
|------|-----------------|----------------|-------------|
| Complaint | 1.6[54] | 7.8[55] | n/a |
| First Amended Complaint | 0.1[56] | 1.2[57] | n/a |
| Second Amended Complaint; Motion for Leave | 4.9[58]; 5.0[59] | 1.3[60] | 1.0[61]; 0.3[62] |
| Motion to Strike | 1.2[63] | 5.6[64] | n/a |

---

[51] Unifund's Status Report – ECF No. 90 at 2; Order – ECF No. 92

[52] Deposition Schedule – ECF No 100; Notice of Settlement – ECF No. 101.

[53] These numbers are based on the plaintiff's submissions, the court's review of them, and specific representations made by the plaintiff about the hours they are seeking by task. Both parties' representations of hours devoted to certain tasks were often unsupported by citations to billing entries, rendering it difficult to recreate the parties' math. Furthermore, in some instances where citations were provided, the calculations were wrong. Consequently, the court has done its best based on the billing records to calculate the time devoted to the tasks in the chart.

[54] Reply – ECF No. 123 at 12; Billing Records – ECF No. 113-2 at entries 4/4/17, 4/12/17, 4/27/17, & 5/8/17.

[55] Reply – ECF. No. 123 at 12; Billing Records – ECF No. 112-3 at entries for 3/23/17, 3/25/17, 4/13/17, 5/7/17, & 5/9/17.

[56] Billing Records – ECF No. 113-2 at entry for 8/11/2017.

[57] Reply – ECF No. 123 at 12.

[58] Reply – ECF No. 123 at 12; Billing Records – ECF No. 113-2 at entries 8/27/18, 8/28/18, & 8/29/18.

[59] Reply – ECF No. 123 at 12; Billing Records – ECF No. 113-2 at entries for 8/29/18 & 8/30/18.

[60] Billing Records – ECF No. 112–3 at entry for 8/28/18.

[61] *Id.* at entries for 8/28/18 & 8/29/18. The last two entries show Mr. Block's communication with counsel regarding the amended complaint and depositions but do not break down the time by category.

[62] *Id.* – ECF No. 112–5 at entry for 8/23/18.

[63] *Id.* – ECF No. 113-2 at entries for 9/11/17.

[64] Reply – ECF No. 123 at 12; Billing Records – ECF No. 112-3 at entries for 9/8/17, 9/10/17, & 9/11/17.

United States District Court
Northern District of California

| | | | |
|---|---|---|---|
| Mediation – Preparation; Travel/Attend | 19.3 (9.3[65];10.0[66]) | 15.8 (4.3[67]; 11.5[68]) | n/a |
| Settlement Agreement | 4.2[69] | 1.5[70] | 0.2[71] |
| Fees Motion & Reply | 31.3[72] | 3.0[73] | 0.5[74] |
| Discovery & Discovery Related | 37.9[75] | 42.0[76] | 0.8[77] |
| Miscellaneous[78] | 38.8 | 58.3 | 5.0 |

| Attorney | Hours | Rate | Amount |
|---|---|---|---|
| Trueblood | 144.3 | $725 | $104,617.50 |
| Stempler | 136.5 | $600 | $ 81,900.00 |
| Block | 7.8 | $550 | $   4,290.00 |

---

[65] Reply – ECF No. 123 at 12; Billing Records – ECF No. 113-2 at entries for 5/2/18, 5/9/18, 5/15/18, 6/6/18, 6/7/18, 6/8/18, & 6/13/18.

[66] Billing Records – ECF No. 113-2 at entry for 6/14/18.

[67] Reply – ECF No. 123 at 12; Billing Records – ECF No. 112-3 at entries 4/23/18, 5/31/18, 6/6/18, 6/7/18, 6/8/18, & 6/13/18.

[68] *Id.* at entries for 6/14/18.

[69] Reply – ECF No. 123 at 13–14; Billing Records – ECF No. 113-2 at entries 8/20/18, 8/21/18, 9/19/18, 9/28/18, 10/3/18, 10/16/18, 10/19/18, 11/8/18, 11/9/18, & 11/27/18.

[70] Reply – ECF No. 123 at 12; Billing Records – ECF No. 112-3 at entries 8/20/18, 8/21/18, 9/28/18, 11/9/18, & 11/23/18.

[71] *Id.* at entry for 9/12/18.

[72] *Id.* at entries for 12/17/18, 1/2/19, 1/21/19, 1/22/19, 1/23/19, & 1/24/19. Mr. Trueblood seeks 15 hours for the reply brief but billed more time. Trueblood Decl. – ECF No. 123–3 at 2.

[73] Billing Records – ECF No. 112–5 at entries for 12/10/18, 1/23/19, & 1/25/19. Mr. Stempler is not seeking fees for the reply brief. Trueblood Decl. – ECF No. 123–3 at 2.

[74] Billing Records – ECF No. 112–5 at entry for 12/31/18.

[75] *Id.* at entries for 7/27/17, 8/10/17, 11/9/17, 1/17/18, 2/15/18, 2/22/18, 5/1/18, 5/2/18, 5/3/18, 5/17,18, 6/21/18, 6/22/18, 7/8/18, 7/9/18, 7/10/18, 7/11/18, 7/13/18, 7/17/18, 7/20/18, 7/26/18, 7/27/18, 7/30/18, 8/7/18, 8/8/18, 8/16/18, 8/20/18, 8/22/18, 8/27/18, 8/29/18, 8/31/18, 9/5/18, 9/6/18, 9/7/18, 9/11/18, & 9/13/18.

[76] *Id.* at entries for 8/10/17, 9/8/17, 9/15/17, 10/21/17, 10/23/17, 11/9/17, 12/22/17, 1/8/18, 1/17/18, 1/21/18, 1/24/18, 1/25/18, 1/26/18, 3/13/18, 4/11/18, 4/13/18, 4/14/18, 5/2/18, 5/4/18, 5/6/18, 5/16/18, 5/21/18, 6/18/18, 6/20/18, 6/21/18, 6/22/18, 7/6/18, 7/9/18, 7/10/18, 7/12/18, 7/13/18, 7/17/18, 7/19/18, 7/23/18, 7/25/18, 7/26/18, 8/7/18, 8/8/18, 8/20/18, 8/23/18, 8/24/18, 8/27/18, 8/28/18, 8/29/18, 8/31/18, 9/5/18, 9/6/18, 9/7/18, 9/8/18, 9/10/18, & 10/1/18.

[77] *Id.* at entries for 8/29/18 & 9/7/18.

[78] Several block-billed entries referencing tasks that could be included in the above categories are included here because the court cannot determine the time devoted to each task.

United States District Court
Northern District of California

| Total | 288.6 | | $ 190,807.50 |
|---|---|---|---|
| Plus 2.0 Multiplier | | | $ 381,615.00 |
| Expenses | | | $    2,267.48 |

### 4.   Parties' Declarations Regarding Fees

#### 4.1   John D. O'Connor — Plaintiff

Mr. O'Connor is an attorney with forty-seven years of legal experience and has been an attorney's-fee expert approximately 150 times.[79] He worked at several private firms in the Bay Area and the U.S. Attorney's Office in San Francisco before opening his own firm, which specializes in business and tort litigation and expert work on attorney's-fee analysis.[80] Mr. O'Connor has been involved in legal fee-review cases since 1977 and developed his expertise in the area via work involving legal auditing and consulting.[81] He is a member and lecturer at the National Association of Legal Fee Analysis, which is an organization dedicated to continuing education and the development of legal-fee-billing standards.[82]

When he worked as a special counsel and director from 2001 to 2006 at the law firm Howard Rice, Mr. O'Connor kept informed about the rates of both AmLaw 500 firms and smaller business firms in order to set the annual rates of the firm.[83] The firm did work throughout California, their surveys included rates from the northern and southern parts of the state, and in his experience, "the rate structure of the San Francisco Bay Area is virtually identical to that in the greater Los Angeles area."[84] He opines on fees in this case based on his litigation, firm, and fee-expert experience.[85]

---

[79] O'Connor Decl. – ECF No. 112–1 at 2 (¶ 1).

[80] *Id.* at 2–3 (¶¶ 4–11).

[81] *Id.* at 4–5 (¶¶ 16–18).

[82] *Id.* at 5 (¶ 18).

[83] *Id.* (¶ 20).

[84] *Id.*

[85] *Id.* at 7 (¶¶ 26–28).

United States District Court
Northern District of California

Mr. O'Connor opines that Mr. Trueblood's rate of $725 an hour is reasonable based on the middle range of rates of AmLaw 500 firms practicing in San Francisco and Los Angeles as these rates are like those charged by reputable small and mid-sized firms.[86] To support his opinion that Mr. Trueblood's $725 hourly rate is reasonable, he notes that Los Angeles courts awarded Mr. Trueblood an hourly rate of $495 in 2009 and an arbitrator awarded him $675 per hour in 2017.[87] As to Mr. Stempler, Mr. O'Connor notes his experience, cites to decisions from court in Southern California, and states that eight to eleven years of fee increases since those cases equate to the requested rate of $600 per hour.[88] In 2017, a court awarded Mr. Block $475 per hour and opines that an increase to $550 is reasonable given the legal market.[89] Mr. O'Connor opines that the attorneys' hours are reasonable.[90]

In response to the defendants' motion to strike his opinion, Mr. O'Connor explains why two courts in the Northern District rejected parts of his opinions about reasonable hourly rates.[91] Both cases were unusual fee petitions in hotly contested litigation[92] and do not affect the analysis here.

### 4.2    Alexander Trueblood — Plaintiff

Mr. Trueblood is the plaintiff's counsel, is a consumer-law and class-action specialist, and has 28 years of legal experience.[93] He worked at several reputable firms before opening his own firm in 1999.[94] Top partners at major firms billed at rates averaging $900 per hour in 2012 while average rates for partners in surveyed firms within major markets averaged rates of $700 per hour in the same year.[95] Courts have approved his hourly rates of $650 to $700 in southern California in

---

[86] *Id.* at 7–8 (¶¶ 32–35).

[87] *Id.* at 8–9 (¶¶ 38–39).

[88] *Id.* at 9–10 (¶¶ 43–49).

[89] *Id.* at 10–11 (¶¶ 50–52).

[90] *Id.* at 11–12 (¶¶ 53–57).

[91] O'Connor Supp. Decl. – ECF No. 123–1 at 2 (¶ 1).

[92] *Id.* (¶ 1)

[93] Trueblood Decl. – ECF No. 113 at 2 (¶¶ 2–3).

[94] *Id.* at 2–3 (¶¶ 3–4).

[95] *Id.* at 6–7 (¶¶ 9–10).

United States District Court
Northern District of California

United States District Court
Northern District of California

1   the following cases: *Vitrano v. Santander Consumer USA, Inc.*, Case No. 2:13-cv-02492-AB-

2   MRW (C.D. Cal. Feb. 2, 2015) ($700 in a class-action settlement of a consumer-credit case

3   involving violations of the UCL and the Rees-Levering Automobile Sales Finance Act); *Jimenez*

4   *v. Alaska USA Fed. Credit Union*, Case No. BC516470 (Cal. Super. Ct. 2015) ($700 in a case

5   involving violations of the Rees-Levering Automobile Sales Finance Act); *Wickremaratne v.*

6   *Gateway One Lending & Finance*, Case No. BC493061 (Cal. Super. Ct. 2015) ($700 in a class-

7   action settlement involving violations of the Rees-Levering Automobile Sales Finance Act);

8   *Wimberly v. Triad Financial Corp.*, Case No. 30-2008-00059511 (Cal. Super. Ct. 2013) ($700 in a

9   class action settlement); *Walker v. Westlake Financial*, Case No. BC436725 (Cal. Super. Ct. 2012)

10  ($675 in a class-action settlement involving violations of the Rees-Levering Automobile Sales

11  Finance Act); *Bruno v. Capital One*, Case No. BC 397149 (Cal. Super. Ct. 2011) ($650 in a class-

12  action settlement); *Tan v. Wheels Financial Group, Inc.*, Alternative Resolution Centers, ARC

13  Case No. 78M4930 ($675 in 2017 in an individual consumer-credit reporting ADR case).[96] He

14  also cites a Northern District case: *Baker v. GEMB Lending, Inc.*, Case No. 10-cv-05261-SBA

15  (N.D. Cal. Dec. 20, 2012) ($675 in an uncontested fees order in a class-action settlement of a case

16  involving violations of the Rees-Levering Automobile Sales Finance Act and the UCL).

17      He turned down other work as a result of this case.[97]

18      In a supplemental declaration, Mr. Trueblood said that he worked 30 hours on the reply brief,

19  Mr. Stempler worked on it too, and he asks for 15 hours.[98]

20  **4.3   Robert Stempler — Plaintiff**

21      Mr. Stempler also is the plaintiff's counsel and is a consumer-rights specialist with over

22  twenty years of experience.[99] He cites cases in southern California where courts awarded him

23  between $240 and $350 per hour in 2006 to 2008: *Amrbiz v. Arrow Fin. Services, LLC*, 2008 WL

24  2095617, Case No. 07-cv-5423-JFW (C.D. Cal. May 15, 2008) ($350 in an individual FDCPA

---

[96] *Id.* at 8–9 (¶ 11).

[97] *Id.* at 9 (¶¶ 12–13).

[98] Trueblood Supp. Decl. – ECF No. 123–3 at 2 (¶ 3).

[99] Stempler Decl. – ECF No. 112–2 at 2 (¶ 1).

case); *Miller v. Midland Funding, LLC*, Case No. 07-cv-04869-ODW (C.D. Cal. April 29, 2008) ($350 in an individual FDCPA case); and *Harlow v. Midland Credit Management, Inc.*, 2007 WL 3165669, Case No. 07-cv-5045-ABC (C.D. Cal. Sept. 5, 2007) ($300 in a case where the plaintiff filed a removal motion with no "objectively reasonable basis" and attorney's fees were awarded as a result).[100]

He turned down other cases to work on this one.[101]

### 4.4    Brandon Block — Plaintiff

Mr. Block also is the plaintiff's counsel, has nearly twenty years of experience, and has specialized in consumer-protection litigation since 2007.[102] Based on personal inquiries, his rate of $550 per hour is below the billing rates of his contemporaries at other law firms engaged in similar litigation, and he lists cases where southern California courts awarded him hourly rates from $375 to $525 in 2007 to 2016: *Miranda v. Simple Cash Loans, Inc.*, Case No. BC580634 (Cal. Sup. Ct. 2016) ($525 in class-action settlement in case involving violations of California's finance-lenders law); *Vitrano v. Santander Consumer USA, Inc.*, Case No. 2:13-cv-02492-AB-MRW (C.D. Cal. Feb. 2, 2015) ($465–$490 in a class-action settlement of a consumer-credit case involving violations of the UCL and the Rees-Levering Automobile Sales Finance Act); *Travis v. Consumer Portfolio Services, Inc.*, Case No. 34-2012-00131362 (Cal. Sup. Ct. 2012) ($425–$465 awarded in debt-collection-harassment case).[103]

He turned down work on other cases by taking this one.[104]

---

[100] *Id.* at 3–4 (¶¶ 9–12). In a 2010 case, according to Mr. O'Connor, the court awarded Mr. Stempler $350 in a non-complex individual FDCPA case, which Mr. O'Connor says is equal to $600 today. O'Connor Decl. – ECF No. 112-1 at ¶¶ 46–47.

[101] Stempler Decl. – ECF No. 112–2 at 4 (¶¶ 15–16).

[102] Block Decl. – ECF No. 112–4 at 1–2 (¶¶ 1–3).

[103] *Id.* at 5–7 (¶¶ 3, 8–9). Mr. O'Connor notes that Mr. Block received a $425 hourly rate in 2017 in *Tan v. Wheels Financial Group, Inc.*, Alternative Resolution Centers, ARC Case No. 78M4930, which he says equates to $550 today. O'Connor Decl. – ECF No. 112-1 at ¶ 52. The court was unable to verify awards in some of the cases listed in Mr. Block's declaration because he did not provide proper citations with case numbers or copies of awards.

[104] *Id.* at 5 (¶ 6).

United States District Court
Northern District of California

### 4.5    Tomio Narita — Defendant

Mr. Narita is the defendant's counsel, has twenty-seven years of experience, and spent the last twenty-three years almost exclusively defending creditors, collection agencies, and law firms in class and individual actions.[105] He charged the defendants $435 to $450 per hour, which he believes is a reasonable rate for someone with his expertise in FDCPA cases, and his clients would not pay the plaintiff's rates.[106] He attached charts attacking the plaintiff's counsel's billings.[107]

### 4.6    Steven Nimoy — Defendant

Mr. Nimoy is the defendants' counsel, has practiced law for twenty-four years, and frequently defends FDCPA cases.[108] He bills his clients $250 per hour for FDCPA cases, and they would not pay more than $250 to $300 per hour, and he believes $300 is reasonable.[109]

### 4.7    June Coleman — Defendant

Ms. Coleman is an attorney at Carlson & Messer, has twenty-one years of experience, practices extensively in FDCPA actions in the Northern District, and provides evidence of the market rate in the district.[110] Her knowledge of the rates in the district is based on her own billing rates, discussions with client and others regarding rates paid to attorneys for similar work, and discussions with other attorneys about what they are paid.[111] She bills her private clients no more than $300 per hour in cases like this, and her clients likely would not pay more than $250 to $300 per hour.[112] In a 2008 Northern District case, a court awarded $375 per hour, but that was a more complex case than this case.[113]

---

[105] Narita Decl. – ECF No. 120–1 at 2 (¶¶ 3–4).

[106] *Id.* (¶ 2).

[107] *Id.* at 6 (¶¶ 12–13).

[108] Nimoy Decl. – ECF No. 120–5 at 2 (¶ 2).

[109] Id. at 2–3 (¶¶ 3–5).

[110] Coleman Decl. – ECF No. 120–2 at 2 (¶ 2).

[111] *Id.* at 3 (¶ 5).

[112] *Id.* at 3–4 (¶ 6).

[113] *Id.* at 5 (¶ 11).

### 4.8    Stephen Turner — Defendant

Mr. Turner is a law-firm partner at Lewis Brisbois and chairs his firm's Consumer Litigation Defense & Financial Services practice group.[114] He has thirty-nine years of experience and provided information about the market rate in the Northern District.[115] He bills his clients $425 per hour, his clients likely would not pay more than $375 for the services provided here, and he supports an hourly rate here of $425.[116]

### 4.9    Mark Ellis — Defendant

Mr. Ellis is an attorney at Ellis Law Group, has thirty-two years of experience, and regularly defends financial institutions in FDCPA cases.[117] He bills his clients no more than $275 per hour in FDCPA matters, which is a reasonable rate for attorneys with his experience in the Northern District.[118] His clients likely would pay no more than $275 to $300 per hour, but he believes $400 to $500 per hour would be reasonable in this case.[119]

### 4.10   Fred Schwinn — Plaintiff (on Reply)

Mr. Schwinn is an attorney at Consumer Law Center, Inc., has twenty-two years of legal experience, and provides information about the market rate in the Northern District.[120] His name is in the survey of fees attached to the defendants' opposition. His current rate is $650 per hour, and courts in Santa Clara County, Santa Cruz County, San Francisco County, and San Mateo County have awarded him $600 per hour in 2018 and 2019.[121]

---

[114] Turner Decl. – ECF No. 120–3 at 1 (¶ 1).

[115] *Id.* at 2 (¶ 2).

[116] *Id.* at 3 (¶¶ 4–6).

[117] Ellis Decl. – ECF No. 120–4 at 1–2 (¶ 2).

[118] *Id.* at 2 (¶ 4).

[119] *Id.* at 3 (¶¶ 5–6). In Mr. Trueblood's supplemental declaration, he submits declarations from Ms. Coleman, Mr. Turner, and Mr. Ellis about his rates in other cases. Trueblood Supp. Decl. – ECF No. 123–3 at 2–3 (¶¶ 4–7).

[120] Schwinn Decl. – ECF No. 123–2 at 3 (¶¶ 4–5).

[121] *Id.* at 10–11 (¶¶ 12–13).

United States District Court
Northern District of California

### 4.11  Ronald Wilcox — Plaintiff (on Reply)

Mr. Wilcox is a consumer-protection attorney at Wilcox Law Firm, P.C., has been practicing since 1995, and is mentioned in the defendants' fees survey, and a court in the Northern District has awarded him an hourly rate of $400.[122] *See Garcia v. Resurgent Capital Servs, L.P.*, No. C-11-1253 EMC, 2012 WL 3778852 (N.D. Cal. Aug. 30, 2012) (Rosenthal/FDCPA case).

### ANALYSIS

The plaintiff asks for $190,807.50 based on 288.6 hours billed and asks for a 2.0 multiplier, resulting in a total fee request of $381,615. The defendants challenge the billing rates, the hours billed, and the 2.0 multiplier.[123] The court reduces the hourly rates, reduces the hours, does not apply a multiplier, and awards $95,275 in fees and $2,267.48 in costs.

A debt collector who violates the FDCPA and the Rosenthal Act is liable for costs and reasonable attorney's fees. 15 U.S.C. § 1692k(a)(3); Cal. Civ. Code § 1788.17 & 1788.30(c). Under the terms of the settlement agreement, the plaintiff is the prevailing party, and the defendants will pay reasonable attorney's fees and costs.[124]

The fees analysis for the federal and state statutes begins with the lodestar. The "lodestar" is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate. *City of Burlington v. Dague*, 505 U.S. 557, 559 (1992). California also utilizes the lodestar method in determining a fee award. *Chavez v. City of Los Angeles*, 47 Cal. 4th 970, 985 (2010); *see also Cavalry SPV I, LLC v. Watkins*, 36 Cal. App. 5th 1070, 1100–01 (2019) (applying the lodestar to a Rosenthal Act case).[125]

---

[122] Reply – ECF No. 123 at 4.

[123] Opp. – ECF No. 120.

[124] Settlement Agreement – ECF No. 113–3 at 2–3.

[125] Under the federal and state standards, the court can adjust the "presumptively reasonable" lodestar based on factors such as the novelty and difficulty of the case, counsel's skill, and other factors that are not part of the lodestar calculation. *Kerr v. Screen Extra Guild, Inc.*, 526 F.2d 67, 69–70 (9th Cir. 1993); *Serrano v. Priest*, 20 Cal. 3d 25, 48–49 (1977). This is a run-of-the-mill debt-collection case that does not merit a multiplier.

United States District Court
Northern District of California

**1. Hourly Rates**

The plaintiff asks for the following hourly rates: $725 for Mr. Trueblood, $600 for Mr. Stempler, and $550 for Mr. Block. The defendants counter that the rates "should be awarded in the range of $350 per hour" and that — while Mr. Block should not receive any compensation at all — any award would be at "an hourly rate commensurate with other junior attorneys practicing in the Northern District."[126] The court awards $475 for Mr. Trueblood, $375 for Mr. Stempler, and $325 for Mr. Block.

The district court determines a reasonable hourly rate based on the "experience, skill, and reputation of the attorney requesting fees." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986). This task is "inherently difficult." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). To assist with the determination the court looks to "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers*, 796 F.3d at 1210-11. This community is typically that in which the district court sits. *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995). The burden is on the fee applicant to show his or her fee is in line with prevailing market rates. *Blum*, 465 U.S. at 895 n.11. "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990); *see also Widrig v. Apfel*, 140 F.3d 1207, 1209-10 (9th Cir. 1998) (declarations by attorneys regarding the prevailing market rate in the community may be enough to establish a reasonable rate in the market). In some cases, the court may look outside of the forum community for rates if local counsel is unavailable "either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case." *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992) (adopting the reasoning of other circuit courts for considering out of district rates).

---

[126] Opp. – ECF No. 120 at 20 & n.13.

United States District Court
Northern District of California

In awarding fees, the court considers fee awards in similar cases involving similar work by comparable attorneys in the Northern District of California.

The defendants cite FDCPA cases in the Northern District where courts have awarded hourly rates ranging from $250 to $600.[127] *See Forto v. Capital One Bank, N.A.*, No. 14-cv-05611-JD (MEJ), 2017 WL 4168529 (N.D. Cal Sept. 20, 2017) (hourly rate of $250 and $200 respectively to defense partner with 12 years' experience and an experienced associate in a simple FDCPA/Rosenthal case involving a debt of approximately $3,000 where the plaintiff acted in bad faith and sought to harass the defendant; required the defendants to submit billing records); *Jacobson v. Persolve, LLC*, No. 14-cv-00735-LHK, 2016 WL 7230873 (N.D. Cal. Dec. 14, 2016) (hourly rates of $500 for attorney with 19 years' experience and $600 for an attorney with 40 years' experience in putative FDCPA and Rosenthal class action); *Ng v. US Bank, N.A.*, No. 15-cv-04998-KAW, 2016 WL 7157760 (N.D. Cal Dec. 8, 2016) ($300 hourly rate to attorney with 20 years' experience in a case alleging wrongful foreclosure, fraudulent concealment, and violations of the FDCPA, Truth in Lending Act, and UCL); *Alvarado v. Hovg, LLC*, No. 14-cv-02549-HSG, 2016 WL 5462429 (N.D. Cal. Sept. 29, 2016) (hourly rates of $450 and $400 in putative class action where the plaintiff settled for $43,000 for alleged TCPA and FDCPA violations); *Jiang v. New Millennium Concepts, Inc.*, No. 15-cv-04722-JST, 2016 WL 3682474 (N.D. Cal. July 11, 2016) (hourly rate of $500 to experienced plaintiff's attorney where the court entered a default judgment of $10,462.90 against the defendant for non-complex FDCPA and Rosenthal violations); *Price-Pauline v. Performant Recovery, Inc.*, No. 14-cv-00850-JD, 2016 WL 310268 (N.D. Cal. Jan. 26, 2016) (hourly rate of $600 to attorney with 28 years' experience, $500 to attorney with 20 years' experience, and $375 to attorney with six years' experience in case alleging violations of the FDCPA, Rosenthal Act, and California UCL where the plaintiff recovered $12,500); *Martell v. Baker*, No. 14-cv-04723-BLF, 2015 WL 3920056 (N.D. Cal. June 25, 2015) (hourly rate of $500 to attorney with 18 years' experience in a non-complex FDCPA/Rosenthal case); *Garcia v. Resurgent Capital Services, L.P.*, 2012 WL 3778852 (hourly rate of $400 to an attorney with 18

---

[127] *Id.* at 22–23.

United States District Court
Northern District of California

1    years' experience in an individual FDCPA case that settled on the eve of trial); *see also Garcia v.*

2    *Stanley*, No. 14-cv-01806-BLF, 2017 U.S. Dist. LEXIS 32550 (N.D. Cal. Mar. 7, 2017) (hourly

3    rates of $500 and $400 for co-counsel who had 19 and nine years' experience respectively in a

4    non-complex FDCPA/Rosenthal case).[128]

5        The court's research revealed the following additional cases: *Reenders v. Premier Recovery*

6    *Grp.*, No. 18-cv-07761-PJH (JSC), 2019 WL 2583595 (N.D. Cal. May 7, 2019) (hourly rate of

7    $225 to attorney with two years' experience in a simple FDCPA case); *Schuchardt v. Law Office*

8    *of Rory W. Clark*, No. 15-cv-01329-JSC, 314 F.R.D. 673, 689 (N.D. Cal. Apr. 28, 2016) (hourly

9    rate of $350 for a senior associate and $400 for other experienced attorneys in a FDCPA class

10    action settlement); *Evans v. Creditor's Specialty Service, Inc.*, No. 15-cv-03355-BLF, 2016 WL

11    730277 (N.D. Cal. Feb. 24, 2016) (hourly rate of $320 for attorney with almost 8 years'

12    experience in a simple FDCPA case); *De Amaral v. Goldsmith & Hull*, No. 12-cv-03580-WHO,

13    2014 WL 1309954 (N.D. Cal. Apr. 1, 2014) (hourly rates of $450 and $350 to experienced

14    FDCPA attorneys in non-complex case where attorneys showed similar past awards in the

15    district).

16        Applying these cases to this straightforward debt-collection case, the court sets Mr.

17    Trueblood's reasonable hourly rate at $475 for the following reasons, among others.[129]

18        First, as illustrated above, it is consistent with fee awards in this district in similar non-

19    complex cases to attorneys of similar experience and expertise.

20        Second, while rates for defense attorneys are somewhat informative, they are not rates for

21    plaintiffs' attorneys. *See Santiago v. Equable Ascent Fin.*, No. C-11-3158-CRB, 2013 WL

22    3498079, at *3 (N.D. Cal. July 12, 2013) (while the court "does not doubt that the statements by

23    these attorneys reflect *their* clients' preferences, they have not addressed the reasonable assertion

24    made by [the plaintiff] that the market for lawyers who represent plaintiffs in consumer actions,

25    and often work on a contingency basis, demand a higher rate than what is appropriate for defense

26

27    [128] *Id.*

28    [129] Ellis Decl. – ECF No. 120-4 at 2–3 (¶¶ 4–6) (hourly rate is $400 to $500 is reasonable; he bills no more than $275 per hour for his FDCPA cases)

attorneys.") (emphasis in the original); *see also Camacho v. Bridgeport Fin'l, Inc.*, 523 F.3d 973, 981 (9th Cir. 2008) ("In order to encourage able counsel to undertake FDCPA cases, as Congress intended, it is necessary that counsel be awarded fees commensurate with those which they could obtain by taking other types of cases.").

Third, despite the expert declaration that hourly rates in northern and southern California are the same, Mr. Trueblood has not cited cases in this district except for an uncontested fees order in a class-action settlement, which is a different type of case. Moreover, the general proposition that rates are the same in law firms is unremarkable and not obviously applicable to non-complex FDCPA cases (or cases of similar complexity) presumably taken on a contingency basis.

Fourth, when a plaintiff fails to meet its burden, the district court may place significant weight on its own knowledge of attorney's fees in the relevant community. *Ingram v. Oroudjiani*, 647 F.3d 925, 928 (9th Cir. 2011). Given the cases and plaintiffs-side lawyers' declarations, and the court's own knowledge of fee awards in equivalent cases, *see Camacho*, 523 F.3d at 981, $475 is on the high side for this kind of case. (A higher hourly rate might be justifiable in a more complex case.)

Applying the analysis to Mr. Stempler and Mr. Block results in hourly rates of $375 and $325, respectively.

**2. Hours**

The plaintiff seeks a fee award for 288.6 hours for work by three attorneys.[130] The defendants conducted a line-by-line analysis of the billing record and suggest that approximately 96.67 hours are reasonable for a total fee award of $33,834.[131] Given the straightforward nature of the case, the court's restricting discovery until August 2018, and a settlement of the case with no dispositive

---

[130] Mot. – ECF No. 112 at 14 (273.6 hours plus 15 hours for the reply brief).

[131] Exs. C & D to Narita Decl. − ECF Nos. 120-1 at 89−171; Opp. – ECF No. 120 at 26.

United States District Court
Northern District of California

motions or equivalent work,[132] the court finds that the following hours are reasonable: 116.3 (Trueblood), 101.9 (Stempler), and 5.6 (Block).[133]

The fee-seeking party has the initial burden to prove the reasonableness of hours expended on the case using detailed time records documenting completed tasks and time expended. *Hensley v. Eckhart*, 461 U.S. 424, 434 (1983); *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 945−46 (9th Cir. 2007). The district court may reduce an award if the documentation is inadequate or if it finds that some of the hours were not reasonably expended, such as those that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 433−34. The opposing party then has the burden of challenging the accuracy and reasonableness of the hours charged. *Gates v. Deukmejian*, 987 F.2d 1392, 1397−98 (9th Cir. 1992). This must be done by specifically identifying defects or deficiencies in the requested hours with conclusory or unsubstantiated objections being insufficient to warrant a reduction. *Cancio v. Fin. Credit Network, Inc.*, No. C 04-3755 TEH, 2005 WL 1629809, at *3 (N.D. Cal. July 6, 2005). The court also conducts an independent review of the fees for reasonableness. *McGrath v. County of Nevada*, 67 F.3d 248, n.5 (9th Cir. 1995). The Supreme Court has also observed that "a defendant cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." *City of Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986) (plurality opinion).

The defendants' line-by-line review of the billing records covered the following areas: duplicative time entries, eliminating Mr. Block's time as unnecessary, eliminating incomplete or vague entries, eliminating entries for time spent on administrative or clerical tasks, eliminating entries for records that conflict for an identical task, eliminating or reducing the rate for services that a junior attorney or paralegal could have performed, and reducing entries for block billings.

**2.1 Duplicative Time Entries**

The defendants challenge work by two (and later three) attorneys on the same tasks, including conferring, preparing the complaint, making modest changes to the first amended complaint,

---

[132] Minute Entry – ECF No. 76; Docket Order – ECF No. 78.

[133] The plaintiff's attorneys characterize the case as complicated. Mot. − ECF No. 112 at 16. It was not, as the Statement shows.

United States District Court
Northern District of California

drafting the second amended complaint and the motion for leave to amend, preparing a motion to strike the defendants' answer that was never filed, preparing for and attending mediation, finalizing the written settlement agreement, preparing the initial case-management statement and initial and amended disclosures, propounding discovery, and preparing the fees application.[134] The plaintiffs counter that the defendants made math errors and that their hours were reasonable.[135]

"Participation of more than one attorney does not necessarily amount to unnecessary duplication of effort." *Democratic Party of Washington State v. Reed*, 388 F.3d 1281, 1286 (9th Cir. 2004). The court must exercise judgment given the particular facts of each case to decide whether any duplication is unnecessary. *Id.* Here, the defendants argue that tasks such as reviewing another attorney's work and conferring about the case are unnecessarily duplicative, but after reviewing the records the court does not fully agree.

The court reduces the billing records by category in the next paragraphs.

First, the defendants challenge 31.4 hours that the plaintiff's attorneys spent communicating with each other.[136] The plaintiff counter that communicating avoids duplicating work, and 31.4 hours over a year and a half is not excessive.[137] The court does not reduce hours in this category. "[I]t is reasonable for the members of the legal team to meet regularly to develop strategy, update one another on developments, and give and receive instructions regarding assignments." *Alvarado*, 2016 WL 5462429 at *2 (allowing 39.8 hours over 15 months in similar FDCPA case); *see also Relente v. Viator, Inc.*, Case No. 12-cv-05868-JD, 2015 WL 3613713 at *2 (N.D. Cal. June 9, 2015) ("it is obvious that co-counsel will have to communicate with one another to provide adequate representation"); *Elise Dragu v. Motion Picture Indus. Health Plan for Active Participants*, 159 F.Supp.3d 1121, 1128−29 (N.D. Cal. Feb. 5, 2016) ("[C]ollaboration and brainstorming are an important aspect of legal practice. Even the most competent and experienced attorney does not have all the answers."). "Therefore, the Court does not automatically exclude

---

[134] Opp. – ECF No. 120 at 11–14.

[135] Reply – ECF No. 123 at 10–14.

[136] Opp. – ECF No. 120 at 12.

[137] Reply – ECF No. 123 at 14–15.

United States District Court
Northern District of California

1    [communications] exchanged between co-counsel, but looks to whether such [communications]

2    are actually 'redundant'." *Jacobson*, 2016 WL 7230873 at *2.

3        Second, the defendants challenge the hours spent drafting the complaints: 11.4 hours for the

4    original complaint, 3.4 hours for minor changes to it, 4.8 hours drafting the second amended

5    complaint, and 5 hours drafting and filing a motion for leave to file the complaint.[138] The plaintiff

6    responds that that they actually billed the following: 9.4 hours for the original complaint, 1.3 hours

7    for the first amended complaint, 4.8 hours for the second amended complaint, and 5 hours on the

8    motion for leave.[139]

9        These cases are routine and involve (except for the facts) plug-and-play legal standards. The

10   court reduces the overall hours for the initial complaint to 5 (3.5 for Mr. Stempler and 1.5 for Mr.

11   Trueblood). *See St. Bernard v. State Collection Service, Inc.*, 782 F. Supp. 2d 823, 825 (D. Ariz.

12   July 12, 2010) (reducing hours from 9.4 to 5). The defendants also cite cases that — while

13   differing somewhat because they involve examples of complaints used by the plaintiff's counsel's

14   in different cases — support this result.[140] *See Silva v. Patenaude & Felix, P.C.*, No. C 08-03019-

15   JW, 2010 WL 2000523 at *3 (N.D. Cal. May 12, 2010) (reducing all hours by 20% including the

16   2.3 spent drafting an initial FDCPA complaint because, among other things, the complaint was

17   virtually identical to the plaintiff's counsel's complaint in a similar FDCPA case); *Abad v.

18   Williams, Cohen & Gray, Inc.*, No. C-06-2550-SBA-JCS, 2007 WL 1839910 at *7 (N.D. Cal. Apr.

19   23, 2007) (reducing hours to draft FDCPA complaint from 4 hours to .5 hours because the

20   complaint was almost identical to other complaints filed by the plaintiff's counsel); *see also

21   Alvarado*, 2016 WL 5462429, at *3 (reduced time to draft second amended FDCPA complaint

22   from 15.3 hours to 3 hours because changes were only a few paragraphs).

23       For similar reasons, the court reduces the hours for the first amended complaint from 1.3 hours

24   to .5 hours and solely for Mr. Stempler's time because the changes were minor and primarily were

25   _____

26   [138] Opp. – ECF No. 120 at 12–13.

27   [139] Reply – ECF No. 123 at 12.

     [140] Opp. – ECF No. 120 at 12–13.

28

                                    22

United States District Court
Northern District of California

1    to change party names.[141] *See Abad*, 2007 WL 1839910 at *7 (minor changes to original complaint

2    warranted a reducing hours awarded from 2.1 to .5 for the first amended complaint).

3        For similar reasons, and following the weight of authority in this district, the court reduces the

4    hours for drafting and filing the second amended complaint to 3 hours (2 hours for Mr. Trueblood,

5    .5 hours for Mr. Stempler, and .5 hours for Mr. Block) and for the straightforward accompanying

6    motion from 5 hours to 3 hours (for Mr. Trueblood). *Alvarado v. Hovg*, 2016 WL 5462429 at *3.

7        Third, the plaintiff seeks 6.8 hours (1.2 for Mr. Trueblood and 5.6 hours for Mr. Stempler)

8    preparing a motion to strike that counsel did not file and that (they say) persuaded the defendants

9    to amend their answer (after they shared a draft).[142] Drafting and sharing a motion is a strategic

10    decision that can aid judicial economy and does not per se mean that an unfiled motion is not

11    compensable. *See Alvarado*, 2016 WL 5462429, at *3 (the "Court will not second guess attorney

12    efforts to conduct the litigation strategy for the case, including when to start work on a motion.")

13    (quotation omitted); *ExpertExchange, Inc. v. Doculex, Inc.*, No. C-08-03875-JCS, 2010 WL

14    1881484, at *9 (N.D. Cal. May 10, 2010) ("[t]he fact that the motion was not, ultimately, filed,

15    does not mean that the time spent preparing the motion was unreasonable"). That said, the overall

16    time must be reasonable and the court awards 4 hours (.5 hours for Mr. Trueblood and 3.5 hours

17    for Mr. Stempler).

18        Fourth, as to fees for deposition preparation, the court worked to keep the case in document

19    discovery until right before settlement, as the Statement shows. Still, the court does not find the

20    requested 2.8 hours to be unreasonable, especially given the context of noticing family depositions

21    on the emotional-distress claims. *See Long v. Nationwide Legal File & Serve, Inc.*, No. 12-cv-

22    03578-LHK, 2014 WL 3809401, at *10 (N.D. Cal. July 23, 2014) (finding time spent on

23    depositions compensable and not unreasonable).

24        Fifth, the attendance of two attorneys at mediation is not necessarily excessive because

25    mediation is an important point in a litigation. *Gurasich v. IBM Retirement Plan*, Case No. 14-cv-

26

27    [141] Amended Compl. – ECF No. 25.

28    [142] Reply – ECF No. 123 at 12.

*United States District Court*
*Northern District of California*

1    02911-DMR, 2016 WL 3683044, at *11 (N.D. Cal. July 12, 2016) (individual ERISA violation

2    case); *Cruz v. Starbucks Corp.*, No. C-10-01868-JCS, 2013 WL 2447862, at *7 (N.D. Cal. June 5,

3    2013) (individual ADA violation case); *Chabner v. United of Omaha Life Ins. Co.*, 1999 WL

4    33227443, at *4 (N.D. Cal. Oct. 12, 1999) (same for summary-judgment hearing in a Unruh Act

5    and ADA case because it is a pivotal point in litigation); *Defenbaugh v. JBC & Associates, Inc.*,

6    Case No. C-03-0651-JCS, 2004 WL 1874978, at *8 (N.D. Cal. Aug. 10, 2004) (allowed fees for

7    two attorneys attending putative class FDCPA case mediation; three "almost certainly" would

8    have been unreasonable). In this non-complex FDCPA case involving modest damages and a

9    credit-card debt of $24,500, spending 35.1 hours in attorney time is excessive. The court cuts the

10   hours in half, resulting in the equivalent of an award for one attorney. This approach results in

11   9.65 hours for Mr. Trueblood and 7.9 hours for Mr. Stempler. *Cf. Santiago v. Equable Ascent Fin.*,

12   Case No. C-11-3158-CRB, 2013 WL 3498079, at *5 (N.D. Cal. July 12, 2013) (allowing travel

13   time) (citing *Chalmers v. City of L.A.*, 796 F.2d 1205, 1216 (9th Cir. 2017)).

14       Sixth, the defendants challenge the time spent on finalizing the settlement agreement as

15   unreasonable. Based on the straightforward nature of the case, the court reduces the plaintiff's

16   overall hours from 5.7 hours to 5 hours (3.5 for Mr. Trueblood and 1.5 for Mr. Stempler).

17       Seventh, given that this is a straightforward FDCPA case, the court reduces the total hours for

18   preparing the initial case-management statement to 2 hours (.2 for Mr. Trueblood and 1.8 for Mr.

19   Stempler). *See Abad*, 2007 WL 1839910, at *8 (in a FDCA class action, reducing hours from 3.8

20   to 2).

21       Eighth, initial disclosures in an FDCPA case like this are modest. The court awards two hours

22   (.2 for Mr. Trueblood and 1.8 for Mr. Stempler). *See Abad*, 2007 WL 1839910, at *8 (plaintiff

23   sought only one hour for the same work). Again, propounding discovery in a straightforward

24   FDCPA case also entails modest effort. The court awards 4 hours to Mr. Stempler.

25       Ninth, based on its review of the billing records, the court awards Mr. Trueblood 25 hours for

26   the fees motion and reply, Mr. Stempler 1.5 hours, and Mr. Block .5 hours. This is close to what

27

28

they seek, and given their obvious effort, it is reasonable. *Alvarado*, 2016 WL 5462429, at *3
(awarding 24.5 hours).[143]

Tenth, the court finds the time spent beyond these categories of tasks to be excessive. This was
a simple case where very little happened. "[T]he district court can impose a small reduction, no
greater than 10-percent – a 'haircut' – based on its exercise of discretion, but anything more
substantial requires clear explanation[.]" *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th
Cir. 2011). As a result, the court deducts a further 8.5 hours from the fee award (3 from
Trueblood, 5 from Stempler, and .5 from Block).

### 2.2   Vague Entries and Block Billing

The defendants challenge 29.5 hours as being vague (73 entries) or block billed (103 entries)
On this record, the court does not reduce them for vagueness and block billing. The court can see
the tasks in the context of the litigation timeline and thus can evaluate the reasonableness of the
entries. *See Hensley*, 461 U.S. at 437 n. 12.

### 2.3   Administrative/Clerical/Junior Associate Tasks

The court does not reduce the rate for the challenged hours given the tasks and that plaintiff's
counsel are solo practitioners without associates or paralegals.[144] *See Missouri v. Jenkins ex rel.
Agyei*, 491 U.S. 274, 288 n.10 (1989) (recognizing a "gray area of tasks that might appropriately
be performed by an attorney or paralegal").

### 2.4   Inconsistencies in Time Entries

For the eleven entries at issue, the court reduces the time to the lowest time entry. *See Ambriz
v. Arrow Financial Services, LLC*, 2008 WL 2095617, at *5−6 (C.D. Cal. May 15, 2008) (reduced
hours for Mr. Trueblood and Mr. Stempler for this reason). This reduces allowable hours as
follows: 1.2 hours for Mr. Stempler, 1.9 hours for Mr. Trueblood, and 0.4 hours for Mr. Block.

---

[143] The court denies the defendants' motion to exclude Mr. Block's time and accepts the plaintiff's
explanation that they associated him for discovery and trial preparation. Reply – ECF No. 123 at 15.
The court deducts .5 hours from his requested fees as the submitted billing records document only 7.3
hours spent on this case, not the 7.8 requested in the plaintiff's submissions. Billing Records – ECF
No. 112-5 at 1–2.

[144] Trueblood Decl. – ECF No. 123-3 at 3 (¶ 10).

United States District Court
Northern District of California

| Date | Stempler | Trueblood | Block |
|------|----------|-----------|-------|
| 3/10/17 | 0.4 | 0.5 | n/a |
| 8/10/17 | 0.2 | 0.3 | n/a |
| 9/11/17 | 0.3 | 0.4 | n/a |
| 11/9/17 | 0.5 | 0.4 | n/a |
| 2/22/18 | 0.9 | 0.8 | n/a |
| 3/5/18 | 0.3 | 0.8 | n/a |
| 3/16/18 | 0.5 | 0.8 | n/a |
| 5/15/18 | 0.3 | 0.4 | n/a |
| 7/5/18 | 0.7 | 0.9 | n/a |
| 7/6/18 | 0.1 | 0.2 | n/a |
| 8/2/18 | 1.00 | 1.10 | n/a |
| 8/8/18 | 0.6 | 0.7 | 0.5 |
| 8/16/18 | 1.1 | 1.3 | n/a |
| 8/28/18 | 0.8 | 0.1 | 0.5 |
| 8/28/18 | 0.3 | 0.1 | n/a |

The court eliminates hours when there is no corresponding entry from the other attorney, which reduces Mr. Stempler's hours by 6 hours.

| Date | Stempler | Trueblood | Block |
|------|----------|-----------|-------|
| 10/19/17 | 0.3 | 0 | n/a |
| 1/16/18 | 0.3 | 0 | n/a |
| 2/22/18 | 0.1 | 0 | n/a |
| 2/22/18 | 0.1 | 0 | n/a |
| 3/13/18 | 0.3 | 0 | n/a |
| 4/10/18 | 0.2 | 0 | n/a |

United States District Court
Northern District of California

| | | | |
|---|---|---|---|
| 4/17/18 | 0.2 | 0 | n/a |
| 4/24/18 | 0.2 | 0 | n/a |
| 4/27/18 | 0.1 | 0 | n/a |
| 5/4/18 | 0.2 | 0 | n/a |
| 6/6/18 | 0.2 | 0 | n/a |
| 6/7/18 | 0.1 | 0 | n/a |
| 6/20/18 | 0.4 | 0 | n/a |
| 6/22/18 | 0.2 | 0 | n/a |
| 7/10/18 | 0.2 | 0 | n/a |
| 7/13/18 | 0.2 | 0 | n/a |
| 7/17/18 | 0.3 | 0 | n/a |
| 7/20/18 | 0.1 | 0 | n/a |
| 7/25/18 | 0.5 | 0 | n/a |
| 8/2/18 | 0.1 | 0 | n/a |
| 8/2/18 | 0.1 | 0 | n/a |
| 8/7/18 | 0.1 | 0 | n/a |
| 8/23/18 | 0.2 | 0 | n/a |
| 8/27/18 | 0.1 | 0 | n/a |
| 8/29/18 | 0.1 | 0 | n/a |
| 9/11/18 | 0.2 | n/a | 0 |
| 9/11/18 | 0.1 | 0 | n/a |
| 9/13/18 | 0.1 | 0 | n/a |
| 9/13/18 | 0.1 | 0 | n/a |
| 11/9/18 | 0.1 | 0 | n/a |
| 11/28/18 | 0.3 | 0 | n/a |
| 12/10/18 | 0.1 | 0 | n/a |

.

United States District Court
Northern District of California

### 2.5   Time Entries Of 0.1 Hours

The billing records have many entries of 0.1 hours. "Although a one-tenth hour timekeeping practice is generally reasonable and a careful review of filings should be encouraged, billing 0.1 hours for certain practices sometimes requires a reduction." *Jacobson*, 2016 WL 7230873, at *10 (citation omitted). The following entries are inflated and excessive:

| Date | Attorney | Task |
|------|----------|------|
| 4/4/17 | Trueblood | Send draft complaint to Stempler |
| 5/12/17 | Trueblood | Review ADR Order |
| 7/21/17 | Trueblood | Review stip re ADR |
| 9/22/17 | Trueblood | Review request for extension of time by process server's counsel |
| 9/28/17 | Trueblood | Review stipulation to file amended answer |
| 4/20/18 | Trueblood | Review court's order denying request to appear telephonically at mediation |
| 5/9/18 | Trueblood | Review EDP's counsel's motion to appear by telephone |
| 5/9/18 | Trueblood | Review email from mediator re attendance of Ascorra and Williams at mediation |
| 7/27/18 | Trueblood | Review court order on discovery plan |
| 9/12/18 | Trueblood | Send release for Williams to client for signature |
| 9/19/18 | Trueblood | Review court's order mooting motion to amend and setting further status report deadlines and conferences |

"While reviewing such notices takes some amount of time, experienced counsel must exercise billing judgment to avoid excessive accumulation of 0.1 hour entries in reviewing such routine documents and court communications." *Kalani*, 2016 WL 379623, at *8. As in *Jacobson* and *Kalani*, the court will reduce these entries by half, or .55 hours

### 3.   Costs

The FDCPA and the Rosenthal Act award a prevailing plaintiff reasonable costs. 15 U.S.C. § 1692k(a)(3); Cal. Civ. Code § 1788.30. The plaintiff seeks, and the defendants do not oppose,

United States District Court
Northern District of California

costs of $2,267.48. The court awards them.

## CONCLUSION

The court calculates the lodestar as follows:

| Attorney | Rate Sought | Rate Awarded | Hours Sought | Hours Awarded | Total |
|---|---|---|---|---|---|
| Trueblood | $725 | $475 | 144.3 | 116.3 | $55,242.50 |
| Stempler | $600 | $375 | 136.5 | 101.9 | $38,212.50 |
| Block | $550 | $325 | 7.8 | 5.6 | $ 1,820.00 |
| **Total** | | | 288.6 | 223.8 | $95,275.00 |

The court thus awards fees of $95,275 and costs of $2,267.48.

**IT IS SO ORDERED.**

Dated: August 27, 2019

_____
LAUREL BEELER
United States Magistrate Judge